IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEAN TURNBOW, WILLIAM and MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, and ANTHONY TAYLOR, on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:11-CV-01030-M |
| LIFE PARTNERS, INC., LIFE PARTNERS HOLDINGS, INC., BRIAN PARDO, and R. SCOTT PEDEN, | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Elizabeth L. Yingling
State Bar No. 16935975
E-Mail: elizabeth.yingling@bakermckenzie.com
Laura J. O'Rourke
State Bar No. 24037219
E-Mail: laura.orourke@bakermckenzie.com
Will R. Daugherty
State Bar No. 24053170
E-Mail: will.daugherty@bakermckenzie.com
BAKER & McKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Tel.: (214) 978-3000
Fax: (214) 978-3099

**ATTORNEYS FOR ALL DEFENDANTS**

## TABLE OF CONTENTS

I.      BACKGROUND OF LPI'S BUSINESS..........................................................................1

II.     PROCEDURAL BACKGROUND.....................................................................................4

III.    ARGUMENT ....................................................................................................................5

        A.      Requests Numbers 1 – 4 are not Narrowly Tailored to be Reasonably Calculated
                to Lead to the Discovery of Admissible Evidence and the Burden of Production
                Outweighs the Benefit...........................................................................................5

        B.      Plaintiffs Seek to Compel Production of Documents that were never Requested
                in Plaintiffs' Discovery Requests........................................................................12

        C.      Defendants have Fully Responded to Request Numbers 6 and 7 ..........................14

IV.     PRAYER..........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Crosby v. La. Health Serv. & Indem. Co.,*
 647 F.3d 258 (5th Cir. 2011) ..................................................................................8

*Gautheir v. Union Pac. R.R. Cop.,*
 No. 1:07-CV-12, 2008 U.S. Dist. LEXIS 47199 (E.D. Tex. June 18, 2008)............6

*Norfolk Co. Retirement Sys. v. Ustain,*
 No. 07 C 7014, 2010 U.S. Dist. LEXIS 36324 (N.D. Ill. April 13, 2010) ..............11

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.,*
 No. H-08-cv-0857, 2008 U.S. Dist. LEXIS 112721 (S.D. Tex. Aug. 11, 2008)...............10, 11

*S.E.C. v. AmeriFirst Funding, Inc.,*
 No. 3:07-CV-1188-D, 2008 U.S. Dist. LEXIS 28171 (N.D. Tex. 2008) ..................5

*SSL Servs., LLC v. Citrix Sys., Inc.,*
 No. 2-08-cv-158-TJW, 2010 U.S. Dist. LEXIS 11470 (E.D. Tex. Feb. 10, 2010) ..................6

**STATUTES**

Tex. Ins. Code §1111A.006(d) (2011)..........................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1).................................................................................................5

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................................6, 8

Fed. R. Civ. P. 34(b) ....................................................................................................12

Fed. R. Civ. P. 34(b)(1)(A)...........................................................................................14

Fed. R. Civ. P. 37..........................................................................................................14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEAN TURNBOW, WILLIAM and MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, and ANTHONY TAYLOR, on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:11-CV-01030-M |
| LIFE PARTNERS, INC., LIFE PARTNERS HOLDINGS, INC., BRIAN PARDO, and R. SCOTT PEDEN, | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, Life Partners, Inc., ("LPI"), Life Partners Holdings, Inc. ("LPHI"), Brian Pardo ("Pardo") and R. Scott Peden ("Peden") (collectively "Defendants") and file this their Response to Plaintiffs' Motion to Compel Production of Documents, and in support thereof would respectfully show the Court as follows:

### I. BACKGROUND OF LPI'S BUSINESS

1.       LPHI is a financial services company and has been the parent company of LPI since 2000.  LPI has been engaged in the secondary market for life insurance generally known as "life settlements" since 1991.[1]  This secondary market is a mechanism for owners of life insurance policies who no longer need or want those policies to sell them in exchange for an

---

[1] For purposes of this Request, the term "life settlement" will refer to both "viatical settlements," which generally refers to policies in which the insured has a terminal illness and a life expectancy of less than two years, and "life settlements," which generally refers to policies in which the insured is a senior citizen and has a life expectancy of greater than two years.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS – Page 1

immediate cash payment, which is discounted to the face value of the policy.  LPI facilitates the sale of life settlements by identifying, examining and purchasing the policies as agents for purchasers.

2.      In general terms, the life settlement process begins when an insured decides to sell his or her life insurance policy on the secondary market by contacting a broker that solicits offers from life settlement companies, such as LPI.  On behalf of the insured, the broker will generally submit to LPI a completed "Application Agreement" providing background information about the insured and the insurance policy.  After conducting a preliminary review of the insured's application, the insured provides, or authorizes the provision of, his or her medical records to LPI.  In turn, LPI provides the medical records to a licensed physician and board certified oncologist, Dr. Donald Cassidy, and, beginning in March 2011, to a life expectancy provider, 21st Services, to evaluate the insured's medical records and provide an estimated life expectancy of the insured.[2]  If LPI makes an offer to the insured to purchase the policy as agent for third-party purchasers, and the insured accepts, LPI and the insured enter into several agreements to effectuate the acquisition, including a "Life Settlement Purchase Agreement" and a "Life Settlement Escrow Agreement."  The Application Agreement, insured's medical records, Life Settlement Purchase Agreement, Life Settlement Escrow Agreement, and other insured related documents (collectively, the "Insured File") are maintained by LPI in a physical folder and, for documents from the years 2000 forward, are also imaged and stored on a database.  This side of the transaction is referred to as the "buy-side" of the life settlement transaction.

3.      Interests in the insurance policy are then generally offered to high net worth individuals, which LPI refers to as "retail purchasers," that come to LPI through a network of

---

[2] This process may vary for "institutional policies."  Under that scenario, the purchaser may choose to whom or to which company or companies the medical records are to be sent for purposes of obtaining life expectancy estimates.

financial planners, whom LPI calls "licensees."  To purchase a life settlement, a prospective retail purchaser submits, among other things, an "Agency Agreement and Special Power of Attorney," which appoints LPI as a limited agent of the purchaser in connection with the purchase of a life settlement, as well as certain disclosure documents discussing the nature and risks of making a life settlement purchase.[3]  Before reserving an interest in a policy, purchasers and/or their financial planner are provided with a "Policy Funding Agreement," which identifies the policy to be purchased, the acquisition price, the administrative services provided, and the escrow arrangements for receipt of the disbursement of funds.  For each life settlement, purchasers and/or their financial planners are also provided with a "Policy Illustration," which sets forth the estimated premium payments on the policies, as well as a "Confidential Case History," which provides summary medical information for, and the estimated life expectancy of, the insured.[4]  Following the retail purchaser's acquisition of the life settlement, purchasers are also given access to various documents accessible through a password protected site, including a "Purchaser Portfolio," which provides a summary of the policies in which the purchaser owns an interest.[5]  The Agency Agreement and Special Power of Attorney, Policy Funding Agreement, Policy Illustration, Confidential Case History, Disclosure, and various correspondence with each purchaser are maintained together in what LPI refers to as the "Purchaser File."  LPI maintains a physical Purchaser File for each retail purchaser and, for documents from the years 2000 forward, LPI also maintains an electronic PDF version on its database.

---

[3] *See* Affidavit of R. Scott Peden, at ¶4, attached hereto as Exhibit "A" ("Peden Aff."), and attached to the Peden Aff. as Exhibits 1 and 2 are redacted true and correct copies of an "Agency Agreement and Special Power of Attorney" and "Agency Agreement and Special Power of Attorney Through IRA".
[4] *See* Exhibit 3 to Peden Aff., a redacted true and correct copy of a "Confidential Case History."
[5] *See* Exhibit 4 to Peden Aff., a redacted true and correct copy of a "Purchaser Portfolio."

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS – Page 3**

## II. PROCEDURAL BACKGROUND

4.      On August 25, 2011, Plaintiffs filed their Class Action Consolidated Complaint ("Consolidated Complaint") on behalf of (1) a putative class of all persons in the United States who purchased a life settlement facilitated by LPI for which Dr. Donald Cassidy provided the life expectancy assessment, and (2) a subclass of putative class members who are or were California residents at the time they acquired life settlements through LPI.[6]

5.      Defendants filed their Motion to Dismiss Plaintiffs' Consolidated Complaint on September 15, 2011, and briefing thereon was completed by October 20, 2011.  To date, the Court has not issued a ruling on Defendants' Motion to Dismiss.

6.      The parties then worked jointly on a proposed scheduling order, but disagreed on how discovery should proceed.  During the November 16, 2011 scheduling conference before the Honorable Judge Lynn, although Judge Lynn did not agree to bifurcate discovery at that time, she did state that she would revisit the issue upon the issuance of specific discovery requests and objections thereto.[7]   In particular, Judge Lynn noted that requiring Defendants to produce documents related to thousands of putative class members when the Court may ultimately decide not to certify the class or to narrow the class would be unduly burdensome to Defendants.

7.      On November 18, 2011, Plaintiffs served their First Request for Production to Defendants, and Defendants served their Objections and Responses to Plaintiffs' First Requests for Production ("Defendants' Objections and Responses") on December 19, 2011.[8]

8.      On December 20, 2011, Defendants produced their first set of production to Plaintiffs Bates-numbered LPI-Tur 00001 – 00659, which primarily consisted of the named-

---

[6] *See* Plaintiffs' Consolidated Class Action Complaint, ¶43.
[7] Although the Defendants' counsel requested the November 16, 2011 hearing transcript on January 6, 2012 on an expedited basis, the reporter was unable to complete the transcript at the time of the filing of this Response.
[8] A true and correct copy of Defendants' Objections and Responses to Plaintiffs' First Requests for Production are attached hereto as Exhibit "B," and incorporated herein by reference.

**DEFENDANTS'   RESPONSE   TO   PLAINTIFFS'   MOTION   TO   COMPEL   PRODUCTION   OF DOCUMENTS – Page 4**

Plaintiffs' Purchaser Files.  The next day, counsel for the Plaintiffs and Defendants held a conference call to discuss Defendants Objections and Responses, and during such call, counsel for Defendants informed Plaintiffs' counsel that Defendants would be producing additional responsive documents with respect to Requests Numbers 1 and 6, and in a follow-up email, informed Plaintiffs' counsel that Defendants would be producing documents responsive to Request No. 7, as well as the other documents, after the holidays.  At no time prior to filing their Motion to Compel did Plaintiffs confer with Defendants' counsel with respect to the issues raised therein concerning Requests Numbers 5, 6, and 7.

9.      On December 30, 2011, Plaintiffs filed their Motion to Compel Production of Documents and Request for Oral Argument ("Plaintiffs' Motion").

10.      On January 18, 2012, pursuant to the parties' previous discussions, Defendants produced documents, Bates-numbered LPI-Tur 000660 – 013644, that are responsive to Requests Numbers 1, 6, and 7.

## III.  ARGUMENT

**A.      Requests Numbers 1 – 4 are not Narrowly Tailored to be Reasonably Calculated to Lead to the Discovery of Admissible Evidence and the Burden of Production Outweighs the Benefit.**

11.      Under the Federal Rules of Civil Procedure, a party may only obtain discovery that is "relevant to any party's claim or defense."[9]  When seeking discovery, "[t]he burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence."[10]  Only after the moving party shows the discovery sought is within the scope of Federal Rule of Civil Procedure 26 does the burden shift to the nonmovant to "show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and

---

[9] Fed. R. Civ. P. 26(b)(1).
[10] *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 U.S. Dist. LEXIS 28171, at *2 (N.D. Tex. 2008) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 262-63 (W.D. Tex. 2006)).

thus should not be permitted."[11] The Rules further direct courts to weigh the burden or expense of discovery against its likely benefit, and to limit discovery where the burden of production outweighs its likely benefit.[12]

12.     Plaintiffs' Requests Numbers 1 – 4 collectively seek all documents provided to any federal or state agency by Life Partners, Inc. or Life Partners Holdings, Inc. that contain the terms "Cassidy," "life expectancy," or "LE".[13]   These requests, however, are not narrowly tailored to either class certification issues or to the merits of Plaintiffs' claims.  As one of the oldest and most active companies in the United States engaged in the life settlements market, LPI and its parent, LPHI, a publicly-traded company, have been involved in numerous inquiries, investigations, audits, and even litigation, with regulatory agencies.   Plaintiffs erroneously assume, however, that applying the three commonplace search terms "Cassidy," "life expectancy," or "LE" will narrowly tailor the scope of such Requests to the relevant issues. Plaintiffs are grossly mistaken.

13.     For example, in connection with the SEC's broad investigation into a wide variety of issues that commenced in 2010, LPI produced all Purchaser Files from 2000 to 2010.[14]  Each of the approximately 14,800 Purchaser Files contain at least one Agency Agreement and Special Power of Attorney—a document that contains the generic term "life expectancy," and thus,

---

[11] *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-cv-158-TJW, 2010 U.S. Dist. LEXIS 11470, at *4 (E.D. Tex. Feb. 10, 2010) (citing *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-cv-01314-G, 2007 U.S. Dist. LEXIS 88987, at *1 (N.D. Dec. 3, 2007); *Gautheir v. Union Pac. R.R. Co.*, No. 1:07-CV-12, 2008 U.S. Dist. LEXIS 47199, at *3 (E.D. Tex. June 18, 2008); see also *Fed. R. Civ. P. 26(b)(2)); see also id.* at *12.

[12] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[13] Defendants' detailed objections and responses to each request for production are more fully set forth in Exhibit "B" attached hereto.

[14] Importantly, the Purchaser Files were not redacted as, due to the amount of documents and the SEC's demands therefor, it was not possible from a timing or cost perspective to redact personal information from those files such as Social Security Numbers, addresses and phone numbers.   In order to protect that information, LPI and LPHI submitted same and requested confidential treatment under the Freedom of Information Act.

would be responsive to Plaintiffs' Request Number 2.[15]   The Purchaser Files also contain

disclosure documents discussing the nature and risks of making a life settlement purchase, which

include the term "life expectancy."[16]  For each of the approximately 14,800 purchasers, there is

also an account overview statement entitled "Purchaser Portfolio" that also contains the term

"LE."[17]  Similarly, for each of the more than 78,000 life settlements these purchasers acquired,

there is a Confidential Case History that contains the term "LE", and thus, all 78,000

Confidential Case Histories would be responsive to Plaintiffs' Request Number 2.[18]  However,

even a cursory review of these documents reveals that Plaintiffs cannot make a good faith

argument that they are reasonably calculated to lead to the discovery of admissible evidence

because there is nothing in such documents that is probative of "what Defendant knew or should

have known with regard to Dr. Cassidy's performance."[19]  Furthermore, Defendants have already

produced to Plaintiffs all of the named-Plaintiffs' Purchaser Files, and thus, Plaintiffs have

copies of numerous Agency Agreements and Special Power of Attorneys, Policy Funding

Agreements, Confidential Case Histories, Policy Illustrations, and other documents typically

found in Purchaser Files.

---

[15] *See* Peden Aff., ¶6, and Exhibit 1 attached thereto, which has the term "life expectancy" highlighted for the Court's convenience.  Many Purchaser Files also contain an agreement for their IRAs, entitled "Agency Agreement and Special Power of Attorney For Purchases Through An IRA," which, likewise, contains the term "life expectancy."  Peden Aff., at ¶6, and Exhibit 2.

[16] *See* Peden Aff., ¶9, and Exhibit 5 attached thereto, which has the term "life expectancy" highlighted for the Court's convenience.

[17] *See* Peden Aff., ¶7, and Exhibit 4 attached thereto, which has the term "life expectancy" highlighted for the Court's convenience.

[18] *See* Peden Aff., ¶8, and Exhibit 3 attached thereto, which have the term "life expectancy" highlighted for the Court's convenience.  Because the Purchaser Files, which include, among other things, Policy Funding Agreements, Confidential Case Histories, premium notices, Policy Illustrations, correspondence with the purchaser, and other purchaser-account information, are maintained as a single-file, the individual documents that contain the terms "Cassidy," "life expectancy," or "LE" cannot be easily separated from the Purchaser File.

[19] Motion, at p. 9.  Plaintiffs assert that they "understand from defense counsel in this case that more than a terabyte of electronic documents have been provided to various government agencies *in connection with probes into LPI's life-expectancy practices*." Motion, at p. 4 (emphasis in original).  To the contrary, during the conference call with Plaintiffs' counsel, counsel for Defendants specifically stated that the requests were overly broad because a significant amount of the information produced to the various governmental agencies did not relate to investigations of the life-expectancies obtained by Life Partners.

14.    In addition, approximately 1,400 Insured Files were produced in connection with the SEC investigation, all of which contain either a Vitical or Life Settlement Purchase Agreement (as applicable) that contain the generic term "life expectancy," and thus, would be responsive to Request Number 2, but lacking any relevancy to Plaintiffs' claims.[20]

15.    Given the minimal benefit of producing documents encompassed by Plaintiffs' overbroad requests, the need to limit Plaintiffs' discovery is particularly important given the significant burden imposed upon Defendants to produce documents responsive to Requests Numbers 1 – 4.  Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(iii), "a district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"  *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

16.    Plaintiffs assert that Requests Numbers 1 through 4 "impose practically no burden on Defendants because they merely seek a subset of previously produced documents."[21] Plaintiffs' entire argument is based upon the faulty assumption, however, that Defendants have a pre-existing litigation database containing all the responsive documents on which they have the ability to run the search terms.  *See* Motion, at p. 9 ("The Court Should Compel Production with Regard to Requests No. 1 – 4, Which Asks Defendants to Run Search Terms 'Cassidy,' 'Life Expectancy,' and 'LE' On Their Pre-Existing Litigation Database of Previously Produced Documents.").  Contrary to Plaintiffs' assumption, there is no "pre-existing litigation database"

---

[20] *See* Peden Aff., ¶10, and Exhibit 6 attached thereto, which has the term "life expectancy" highlighted for the Court's convenience.  As with the Purchaser Files, the Insured Files were not redacted, but were submitted with a FOIA request for confidential treatment.

[21] Motion, at p. 9 ("The requests may or may not result in a large number of responsive documents….").

that contains all documents provided by LPI to the SEC that would allow Defendants to simply "run search terms."[22]   Nor does LPI, through its attorneys or otherwise, maintain a litigation database that contains all documents provided by LPI to the Colorado Securities Commission, the California Securities Commission, the SEC (in connection with the litigation in the 1990's), or any other state or federal regulatory authority.[23]

       17.    For example, with respect Request No. 2, which seeks all documents produced to the SEC in connection with its investigation of LPI and LPHI, the vast majority of the documents and electronically stored information provided to the SEC are not in a "pre-existing litigation database," but rather, are kept in various formats and mediums in which they were provided to the SEC.  The universe of documents and electronically stored information produced to the SEC include the following:

> a.  Millions of pages of electronic documents concerning thousands of purchasers, insureds, and licensees, all of which are in PDF format in separate files.[24]
>
> b.  Thousands of pages of physical and electronic documents relating to marketing materials, reports, and various accounting issues of LPHI.[25]
>
> c.  A proprietary database that contains millions of data inputs.[26]
>
> d.  More than 500,000 emails and attachments without limitation as to scope.  Other than certain of the documents recently produced to Plaintiffs and added to the litigation database, the litigation database contains only emails and attachments from LPI, although a significant amount of the emails produced to the SEC in the database were produced in PST format and were subsequently added to the litigation database.[27]

---

[22] Peden Aff., ¶11.
[23] *Id.*
[24] Peden Aff., ¶12.a.
[25] Peden Aff., ¶12.b.
[26] Peden Aff., ¶12.c.
[27] *See* Affidavit of William R. Daugherty ("Daugherty Aff."), at ¶2, attached hereto as Exhibit C.

18.     Consequently, even if Plaintiffs' search terms were narrowly tailored to identify responsive documents, which, as discussed *supra*, they are not, Defendants cannot simply run searches in a "pre-existing database" to identify responsive documents.   Instead, Defendants would be required to sift through millions of pages of documents and electronically stored information in various formats to determine responsiveness to Plaintiffs' claims.[28]   Added to this burden is the fact that the documents have not been redacted but are required to be redacted in order to protect individuals' privacy rights.[29]

19.     The frequency with which the terms "life expectancy" and "LE" are used within LPI's business eviscerates any utility of such terms in tailoring the Requests to documents reasonably calculated to lead to the discovery of admissible evidence.[30]   For example, with respect to the litigation database containing the emails and attachments produced to the SEC, applying the search terms "Cassidy", "life expectancy", or "LE" to the litigation database results in over 58,000 emails and attachments, many with voluminous spreadsheets and PDF's in various file formats, that would require hundreds of hours to review prior to production.[31]   *See Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.,* No. H-08-cv-0857, 2008 U.S. Dist. LEXIS 112721, at *3-4 (S.D. Tex. Aug. 11, 2008) (finding the discovery requests for documents and electronically stored information submitted to governmental agencies in connection with investigations of the defendants would impose an undue burden on defendants even though the documents had already been assembled and produced to government agencies because the defendants would nevertheless need to review a large volume of documents prior to

---

[28] Peden Aff., ¶13.
[29] *See, e.g.,* Tex. Ins. Code §1111A.006(d) (2011) (prohibiting disclosure of the identities of insured and the information that could be used to identify the insureds).
[30] The ineffectiveness of Plaintiffs' proposed search terms is illustrated by the analogy of a plaintiff in a automotive products-liability case asking General Motors to produce all documents provided to any governmental agency that contain the words "automobile" or "car" given that such terms are so integral to the company's business that they do not provide any meaningful limitation.
[31] *See* Daugherty Aff., at ¶3, attached hereto as Exhibit C.

production and the plaintiffs' failed to demonstrate a need for the documents to respond to a dispositive motion).

20.    A recent case that is remarkably similar to the instant circumstances is instructive. In *Norfolk Co. Retirement Sys. v. Ustain*, the court did not bifurcate discovery but instead directed the parties to avoid taking discovery related solely to non-class certification issues prior to the court deciding certification.[32]   Plaintiffs in that case, as here, sought documents defendants had produced to the SEC in a possibly related, but not identical, investigation.[33]   The court denied plaintiffs' motion to compel such production, finding that plaintiffs failed to show how the documents were relevant, particularly in regard to certification issues.[34]   The court also considered the burden on defendant of locating documents relevant to certification from the millions of pages produced to the SEC, and the court did not agree with plaintiffs that merit-based discovery was warranted just because the burden on defendants of reproducing the entire production to the SEC was minimal.[35]

21.    In short, because Request Numbers 1 – 4 are not narrowly tailored to be reasonably calculated to lead to the discovery of admissible evidence concerning class certification issues or, for that matter, the merits of Plaintiffs' claims, and because the burden of production far outweighs the minimal benefit of the documents sought, particularly given that the Defendants' Motion to Dismiss is still pending and the pre-certification stage of the case, Plaintiffs' Motion with respect to Requests Numbers 1 – 4 should be denied.

---

[32] No. 07 C 7014, 2010 U.S. Dist. LEXIS 36324, at *5-10 (N.D. Ill. April 13, 2010).
[33] *Id.* at *7-10.
[34] *Id.*
[35] *Id.*

**B.**   **Plaintiffs Seek to Compel Production of Documents that were never Requested in Plaintiffs' Discovery Requests.**

22.    Plaintiffs ask the Court to compel the production of certain documents from Defendants when Plaintiffs never propounded requests for such documents.  Such a request is both (i) premature and (ii) improper, as it seeks to circumvent the normal discovery process contemplated by the Federal Rules of Civil Procedure, as well as resulting in the needless escalation of litigation costs and attorneys' fees and a waste of judicial resources.  *See, e.g.,* Fed. R. Civ. P. 34(b) (setting forth the procedure for propounding requests for production of documents).

23.    With respect to Plaintiffs' request to compel the production of documents in response to Request Number 5, Plaintiffs seek to amend the request, via their Motion to Compel, to include language encompassing materials that were simply not sought in the request as it was served on Defendants.  By its plain language, Plaintiffs' Request Number 5 limits the scope of the request to documents "in or pertaining to *files or accounts* for *any of the named plaintiffs in the Consolidated Class Action Complaint*."[36]  Subject to an objection to an ambiguity in the request, Defendants agreed to produce responsive documents.[37]  Additionally, in the Response, Defendants directed Plaintiffs to a password-protected website (along with the user names and passwords for the named Plaintiffs) to which each purchaser has access concerning his or her specific transactions with LPI, such that the named Plaintiffs and their counsel could review and print any materials housed on that site at any time.[38]  Thereafter, well before Plaintiffs filed their Motion to Compel, Defendants produced the documents in the named Plaintiffs' purchaser files, which included all documents relevant to such Plaintiffs' "files or accounts" as they are kept in

---

[36] *See* Motion, at p. 6 (emphasis added).
[37] *See* Defendants' Responses, p. 5, at Resp. to Req. No. 5.
[38] *Id.*

the ordinary course of LPI's business.[39]   And yet, Plaintiffs seek Court intervention for the production of documents in response to Request Number 5, not because Defendants refused to produce responsive documents to the request as written, but because Plaintiffs have re-written the request to include subjects that are not mentioned.

24.     More specifically, despite the language in Request Number 5 expressly limiting the requested items to those in or pertaining to *the named Plaintiffs'* files or accounts, in their Motion to Compel, Plaintiffs complain that Defendants limited "their production to documents in the named plaintiffs' files."[40]   Plaintiffs attempt to recast their request as seeking "documents concerning the sell side of the transaction and documents associated with *other purchasers and potential purchasers* of an interest in the same insured's policy"[41] and "information regarding the insurance policies that the named plaintiffs purchased interests in."[42]   Notably, Plaintiffs did not confer with Defendants on this assertion prior to filing their Motion to Compel.

25.     Plaintiffs' entreaties to the Court with respect to Request Number 5 should be soundly rejected, and, if Plaintiffs wish to obtain additional documents that they believe are relevant to their claims, but which have not yet been requested, through appropriately and narrowly-crafted discovery requests, including but not limited to "sell-side" and "insurance policy related" documents, they should propound new requests for those materials.   It is simply improper for Plaintiffs to seek an order from the Court regarding discovery requests that have never been issued.

---

[39] *See* Letter dated December 20, 2011, producing documents to Plaintiffs in response to Request Number 5, a true and correct copy of which is attached as Exhibit 1 to the Daugherty Aff.
[40] Motion, at p. 6.
[41] *Id.*
[42] *Id.* at p.10.

**C.      Defendants have Fully Responded to Request Numbers 6 and 7.**

26.      It is frankly unclear what Plaintiffs are asking the Court to compel Defendants to produce with respect to Request Numbers 6 and 7.   As noted above, to the extent Plaintiffs are attempting to assert that Defendants have not produced "sell-side" and "insurance policy related" documents in response to Request Number 6, just as with Request Number 5, Plaintiffs have not asked for such documents, including in Request Number 6.[43]   Plaintiffs attempt to broaden the scope of their requests in the Motion to Compel, not only beyond class certification issues, but beyond the scope of the allegations in the Complaint, as evidenced by the assertion that documents pertaining to "an institutional customer of LPI" are responsive to Requests 5 and 6, despite the language in both requests limiting the scope to the named Plaintiffs.[44]   Again, Plaintiffs should propound discovery requests in accordance with the Federal Rules of Civil Procedure by describing "with reasonable particularity each item or category of items" to be produced. Fed. R. Civ. P. 34(b)(1)(A).  Simply arguing that categories of documents are relevant to their claims—without having propounded requests for such items—does not equate to a proper basis for a motion under Rule 37.  *See* Fed. R. Civ. P. 37.

27.      In fact, Rule 37 requires certain prerequisites to the filing of a Motion to Compel, two of which are at issue in connection with Plaintiffs' Motion.  First, the Rule requires that the movant confer in good faith with the party against whom the discovery has been sought "in an effort to obtain it without court action." *Id.*   Second, the party from whom relief is sought must have failed to respond or failed to permit inspection (or production) under the applicable Rule— in this case, Rule 34.  *See id.* at (3)(B)(iv).

---

[43] *See* Motion, at p. 6 (quoting Request No. 6, in which Plaintiffs request documents "concerning the life expectancy of any insured under any policy purchased by a named plaintiff…").
[44] *See* Motion, at p. 10.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS – Page 14**

28.     In this case, although Plaintiffs did confer with Defendants prior to filing the Motion, it appears from the content of the Motion that the conference was nothing more than a formality with respect to Request Numbers 5, 6, and 7.  This is apparent in that Plaintiffs have disregarded, as evidenced by the Motion, Defendants' agreement to produce, and subsequent (or previous, in the case of Number 5) production of, all responsive documents to those Requests. More specifically, following the conference between Plaintiffs' and Defendants' counsel regarding Plaintiffs' stated intent to file a Motion to Compel (which was not itself provided to Defendants before it was filed), Defendants' counsel informed Plaintiffs' counsel that Defendants agreed to provide Plaintiffs with the following documents in response to Request Numbers 6 and 7:

- **Request No. 6**:  With respect to the insureds in policies in which the named Plaintiffs purchased an interest, redacted medical records, life expectancy estimates from Dr. Cassidy, and life expectancy estimates from any third-party provider pertaining to such insureds, as applicable.

- **Request No. 7**:  All non-privileged documents analyzing Dr. Cassidy's performance.

The above referenced documents have in fact been produced to Plaintiffs.[45]  Thus, Plaintiffs' Motion seeking to compel the production of documents in response to Requests 5, 6, and 7 is unwarranted, and the Court should reject Plaintiffs' request to compel anything in response to those Requests.[46]

---

[45] *See* Letter dated January 18, 2012, producing documents to Plaintiffs in response to Request Numbers 6 and 7, a true and correct copy of which is attached as Exhibit 2 to the Daugherty Aff.

[46] Plaintiffs' Motion does not challenge or otherwise address the claims of privilege asserted by Defendants in their Objections and Responses to Plaintiffs' Requests for Production, nor has Plaintiffs' counsel discussed any such issues with Defendants' counsel other than to request a privilege log, which Defendants are in the process of preparing.  Accordingly, Defendants submit this Response to Plaintiffs' Motion without waiver of any claims of privilege asserted in Defendants' Objections and Responses to Plaintiffs' Requests for Production.

## IV.   PRAYER

29.   For each of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel, and grant to Defendants all other relief to which they may be justly entitled.

Respectfully submitted,

/s/ Elizabeth L. Yingling
Elizabeth L. Yingling
State Bar No. 16935975
E-Mail: elizabeth.yingling@bakermckenzie.com
Laura J. O'Rourke
State Bar No. 24037219
E-Mail: laura.orourke@bakermckenzie.com
Will R. Daugherty
State Bar No. 24053170
E-Mail: will.daugherty@bakermckenzie.com
BAKER & McKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Tel.: (214) 978-3000
Fax: (214) 978-3099

**ATTORNEYS FOR ALL DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail.

/s/ *Elizabeth L. Yingling*