UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SEAN TURNBOW, WILLIAM *and* MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, *and* ANTHONY TAYLOR, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> LIFE PARTNERS INC., LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, *and* R. SCOTT PEDEN, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.: 3:11-CV-1030-M <br><br> (Consolidated with Civil Action Nos. 3:11-cv-1093-M, 3:11-cv-1137-M, 3:11-cv-1152-M, 3:11-cv-1225-M, and 3:11-cv-1325-M) |

**PLAINTIFFS REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Plaintiffs submit this reply brief in support of their December 30, 2011 motion to compel. Respectfully, Plaintiffs submit that Defendants Life Partners Inc. ("LPI"), Life Partners Holdings, Inc. ("LPHI"), Brian D. Pardo, and R. Scott Peden misstate the facts and the record in their response brief and should be compelled to produce the documents that Plaintiffs requested.

**I. INTRODUCTION**

There is much in Defendants' unsupported recitation of the facts that Plaintiffs disagree with.[1]

More importantly, however, the primary issue here is one that is undisputed—that the central issue in this case is the inaccuracy of the life expectancies ("LEs") LPI obtained from Dr.

---

[1] Defendants' brief makes inaccurate factual assertions without any attempt to support them with evidence. Although Plaintiffs will not attempt to rebut each one, Plaintiffs do object and disagree that they failed to properly confer with defense counsel or that LPI's customers are fairly described as "high-net worth" investors.

Donald Cassidy. LPI concedes that it acts as agent and fiduciary of Plaintiffs in obtaining and providing LEs:

> Q. Under the agency agreements with its retail customers, LPI acts on behalf of the purchasers as their agent, correctly—is that correct?
>
> A. That's correct.[2]
>
> Q. The things that LPI does as purchasing agent it should do in the interests of the purchasers and it should do diligently, correct?
>
> A. Yes.[3]
>
> Q. As purchasing agent, LPI identifies, examines, and purchases policies on behalf of the purchasers?
>
> A. Yes.
>
> Q. This includes obtaining a life expectancy estimate?
>
> A. Yes, sir.
>
> Q. And disclosing that to the purchasers?
>
> A. Yes, sir.[4]
>
> Q. If I understand you right, Mr. Peden, to the extent that the relationship is set out in the agency agreement and special power of attorney, Life Partners, LPI, agrees that it has a fiduciary responsibility under that agreement?
>
> A. As agent for the principal, yes.[5]
>
> Q. As purchasing agent, LPI engaged Dr. Cassidy to provide a life expectancy on all of these contracts, all of its contracts with retail customers?
>
> A. Yes, sir.[6]

---

[2] Deposition of R. Scott Peden as the Corporate Representative of Life Partners, Inc. ("Peden Dep."), at 45:19-22, Exhibit A to Plaintiffs' concurrently filed supplemental appendix.

[3] *Id.* at 47:5-8.

[4] *Id.* at 47:21-48:3.

[5] *Id.* at 95:8-13.

[6] *Id.* at 48:11-15.

Plaintiffs contend that LPI breached its fiduciary duties and its contracts with its customers when it retained, used, and continued to use Dr. Cassidy to provide life expectancies in light of his utter lack of experience, training, and qualifications in this area.[7] Plaintiffs contend that LPI breached its fiduciary duties in failing to monitor Dr. Cassidy's performance.[8] Plaintiffs also contend that LPI effectively turned a blind eye to Dr. Cassidy's track record of more than a decade of abysmal performance providing life expectancies because it was in LPI's financial interest to do so and despite the fact that doing so was a clear violation of LPI's fiduciary obligations to put its retail customers' interests ahead of its own.[9]

Shortly after Plaintiffs filed this motion, the U.S. Securities and Exchange Commission sued LPI's parent company, Defendant LPHI, primarily on the same theory. The SEC complaint alleges that

- "Life Partners has, since at least 1999, systematically used materially underestimated LEs in order to inflate its revenues."[10]

- "Prior to hiring Cassidy, Life Partners and Pardo did not conduct any meaningful due diligence on Cassidy's qualifications to act as a life expectancy underwriter."[11]

- "Prior to being hired by Life Partners, Cassidy had no experience rendering LEs. He had no actuarial training. As of February 8, 2011, Cassidy had never researched the methodology used by life settlement underwriters. In fact, in the ten-plus years he has worked for Life Partners, Cassidy never modified his methodology or evaluated his track record on LEs."[12]

---

[7] Consolidated Class Action Complaint ("Complaint") ¶ 28.

[8] *Id.* ¶ 37.

[9] *Id.* ¶ 31.

[10] *See Securities & Exchange Commission v. Life Partners Holdings, Inc. et al.*, No. 1:12-cv-00033-JRN (W.D. Tex. Jan. 3, 2012) at ¶ 5, Exhibit B to Plaintiffs' concurrently filed supplemental appendix.

[11] *Id.* ¶ 6.

[12] *Id.* ¶ 7.

- "By at least fiscal year 2006, it was obvious to Life Partners, Pardo, and Peden the extent to which Cassidy, utilizing the Kelly methodology, had delivered to Life Partners systematically and materially underestimated LEs. Specifically, as of February 28, 2006, Pardo and Peden knew or were reckless in not knowing that 88% of the relevant policies brokered by Life Partners had exceeded their Cassidy-rendered LE. By February 28, 2009, Life Partners, Pardo, Peden and Martin knew or were reckless in not knowing that 90% of the relevant policies brokered by the Company had exceeded their Cassidy-rendered LE."[13]

The SEC's accompanying press release quotes SEC Enforcement Division Director Robert Khuzami as saying, "Life Partners duped its shareholders by employing an unqualified medical doctor to assign baseless life expectancy estimates to the underlying insurance policies."[14]

In their response brief, Defendants argue that Plaintiffs' requests for the information provided to the SEC regarding Dr. Cassidy and life expectancy are not reasonably calculated to lead to the discovery of admissible evidence. This argument is plainly wrong. In fact, the same evidence concerning Dr. Cassidy's life expectancies that led the Government to conclude they were "baseless" and "systematically and materially underestimated" will also demonstrate that, by using Dr. Cassidy, Life Partners breached fiduciary obligations to Plaintiffs.

Equally misguided is Defendants' contention that Plaintiffs have failed to ask for certain documents described in the opening motion. Although Defendants finally produced some documents on the eve of their deadline to respond to Plaintiffs' motion to compel, the production is woefully inadequate and does not resolve the issues raised by Plaintiffs' motion.

## II. ARGUMENT

### A. Requests No. 1 – 4, Regarding Documents Already Produced to the Government,

---

[13] *Id.* ¶ 8.

[14] *See* SEC Charges Life Settlements Firm and Three Executives with Disclosure and Accounting Fraud (Jan. 3, 2012), www.sec.gov/news/press/2012/2012-2.htm, Exhibit C to Plaintiffs' concurrently filed supplemental appendix.

**Are Discoverable**

Courts frequently order early discovery of previously-produced documents.[15] Nevertheless, Defendants here – despite conceding that LPI owed Plaintiffs a fiduciary duty when, as purchasing agent, it retained Dr. Cassidy to provide life-expectancy estimates – contend that documents concerning Dr. Cassidy and life expectancy are wholly irrelevant to Plaintiffs' claims. To make their case, Defendants remarkably point to documents evidencing transactions on which Dr. Cassidy provided life-expectancy estimates for members of the proposed class. Certainly these documents are relevant. In fact, core transaction documents of this nature will be admissible.

Defendants also state that there are 14,800 agency agreements in purchaser files. These agreements, however, create the agency and therefore fiduciary relationship between LPI and the class members. Thus, those agency agreements are highly relevant.

Likewise, Defendants state that there are 78,000 case histories and many more policy funding agreements, each of which state the life expectancy Dr. Cassidy estimated for the given transaction. Nevertheless, what these estimates were—and how off they are—is precisely the evidence that Plaintiffs are seeking. The fact that there is a lot of evidence has nothing to do with its relevance or admissibility. It is merely the result of LPI using Dr. Cassidy's life expectancies exclusively for more than a decade.

Defendants further confound the issue by stating that there is no "pre-existing litigation database containing *all* the responsive documents," whereas one of their own supporting affidavits contradicts this very statement: "In connection with the SEC investigation, more than

---

[15] *See, e.g., In re Toyota Motor Corp.Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, Case No. 10ML02151 (C.D. Cal. June 1, 2010) ; *In re Pharm. Indus. Average Wholesale Price Litig.,* MDL No. 1456, at 1 (D. Mass. 2002).

500,000 emails and attachments were provided to the SEC. . . . Applying the search terms 'Cassidy', 'life expectancy', or 'LE' to the Litigation Database results in over 58,000 emails and attachments."[16] Apparently Defendants' point is that its documents are not "all" in a single database but in more than one. Defendants' point would therefore amount to nothing more than an attempt to split hairs and avoid the real issue.

In this regard, Defendants do not say that they are unable to run search terms on their "Litigation Database" or databases. And though Defendants do say that an order compelling production would require them to sift through millions of pages of electronically stored information, they do not say that this electronic sifting is impractical or even difficult to do electronically, using search tools, rather than manually. Indeed, Plaintiffs' requests do not ask Defendants to do any manual searching of documents.

Defendants cite two cases to support their position, but those cases are inapposite. In *Rio Grande Royalty Co., Inc.* v. *Energy Transfer Partners, L.P.*,[17] for example, the Court began by noting that it had discretion to stay discovery during the pendency of a motion to dismiss, particularly in an antitrust case, "where discovery tends to be broad, time-consuming, and expensive." Here, by contrast, the Court has already indicated that it will at least in large part deny the motion to dismiss. Moreover, the instant case is not an antitrust case and, in any event, has not launched into far-ranging discovery. Perhaps even more important, the plaintiff in *Rio Grande Royalty* conceded that it did not need the discovery to respond to the pending motion to dismiss. Here, we are beyond that point and into the discovery phase of the case.

In addition, the Court in *Rio Grande Royalty* found that the defendants would need to re-review the documents before producing them to the plaintiffs. Although the Defendants' brief

---

[16] *See* Daugherty Aff. ¶ 3-4 (Ex. 3 to Defendants' response) (emphasis added).

[17] No. H-08-cv-0857, 2008 U.S. Dist. LEXIS 112721, at *3-4 (S.D. Tex. 2008).

here refers to such a review,[18] the support cited lacks any mention of a need to review the documents.[19] In fact, any such review would appear unnecessary, given that the documents were either reviewed for privilege before production to the SEC or the privilege was waived. Even if such a review were made, electronic searching would drastically reduce the time. Consequently, the lack of evidentiary support for Defendants' argument comes as no surprise.

The second case, *Norfolk Co. Retirement Sys.* v. *Ustain*,[20] involved a securities class action with a pending motion for class certification. There, the plaintiffs argued "rather weakly" that some of the documents might be relevant to class certification. Nevertheless, the plaintiffs there made no showing of any such purported relevance, and the defendants stipulated that they would not use the documents in connection with the class certification motion. Here, by contrast, the Plaintiffs have made a strong showing of relevance,[21] and the Defendants have not offered to stipulate not to use the documents in class certification or otherwise.

Moreover, the Defendants here have incorrectly described the posture of the *Norfolk* case. There – and contrary to what Defendants here have suggested – "The district court made clear that the parties are *not* to take discovery relating solely to non-class certification issues."[22] The instant case stands in sharp contrast – the Court declined Defendants' invitation to limit discovery solely to class certification issues.

Finally, Defendants cannot bring discovery to a standstill by merely stating that they would have to redact documents before producing them. They have made no argument and offered no authority for this naked assertion. Neither have they explained why their documents

---

[18] Defendants' Response at p. 10 & n.31.

[19] *See id.* n.31 (mentioning 58,000 documents but no need to review).

[20] 2010 WL 1489996 (N.D. Ill. Apri13, 2010).

[21] *See* pp. 1-5 *supra*.

[22] 2010 WL 1489996 at p. 3 (emphasis added).

require redaction before production in this case, where they would be subject to the strict provisions of a protective order that Defendants agreed to, when Defendants previously produced those same documents to the Government unredacted.

In sum, the documents are highly relevant, and the burden of producing them is far from disproportionate to their relevance. Indeed, the burden is far less than usual because the documents are all electronic <u>and</u> have been previously reviewed for privilege and produced. Defendants previously asked the Court to bifurcate discovery in this action, and the Court refused to do so. They have not asked for reconsideration. Instead, they are attempting to obtain the same result by withholding documents regarding class-member transactions under the guise of relevance and burden objections. Those objections lack merit and should be overruled.

### B. Requests No. 5 – 6, Concerning Documents And Life Expectancies Pertaining to Plaintiffs' Accounts, Are Not Limited to the Documents Found in Named Plaintiffs' Files

Defendants attempt to rewrite Plaintiffs' fifth and sixth requests as limited to documents actually located within LPI's files for the named plaintiffs. This is not the case. Request No. 5 seeks documents "in <u>or</u> pertaining to files <u>or</u> accounts for any of the named plaintiffs." Certainly documents concerning what Defendants' brief calls the "sell-side" of the life-settlement transaction – the transaction between LPI as agent for Plaintiffs and the insured who is the seller – pertain to the named Plaintiffs' accounts.

Even more specifically, Request No. 6 seeks "All Documents concerning the life expectancy of any insured under any policy purchased by a named plaintiff." Quite plainly, this request is not limited to documents in the named Plaintiffs' files. It calls for any life-expectancy-related documents, wherever they may be located, providing they concern the insureds on any of the named Plaintiffs' life settlements. Again, this request requires Defendants to look through

sell-side files for documents concerning life expectancy—and in any other files where they are likely to be found. They may not look only at the named Plaintiffs' buy-side files and call it quits. The objections to Requests Nos. 5 & 6 should be overruled and Defendants should be compelled to produce responsive documents.

### C. Defendants Appear to Have Mooted the Motion with Regard to Requests No. 7 by Withdrawing All Objections Other Than Their Privilege Objection

Twenty days after Plaintiffs filed the present motion, on the eve of filing their response brief, Defendants produced approximately 12,000 documents. Included in that production, Defendants contend in their response brief, are all non-privileged documents responsive to Plaintiffs' Request No. 7. In light of Defendants' production and withdrawal of their objections, Plaintiffs believe that this issue is resolved, but reserve the right to raise the issue after reviewing the documents in detail.

## IV. CONCLUSION

Plaintiffs ask this Court to overrule Defendants' objections and order them to produce the documents requested in Plaintiffs' Requests Nos. 1 – 6 and to do so within ten (10) days of this Court's order.

                Respectfully submitted,

/s/ Jonathan Bridges
Terrell W. Oxford
Texas State Bar No. 15390500
Jonathan Bridges
Texas State Bar No. 24028835
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
Email: toxford@susmangodfrey.com
       jbridges@susmangodfrey.com

Steven G. Sklaver
California Bar No. 237612 (Admitted PHV)
Amy T. Brantly
California Bar No. 210893 (Admitted PHV)
**SUSMAN GODFREY L.L.P.**
Suite 950
1901 Avenue of the Stars
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ssklaver@susmangodfrey.com

Kim E. Miller
California Bar No. 178370 (PHV Pending)
**KAHN SWICK & FOTI, LLC**
500 5th Avenue, Suite 1810
New York, NY 10110
Tel: (212) 696-3730
Fax: (504) 455-1498
Email: Kim.Miller@ksfcounsel.com

Lewis S. Kahn
Louisiana Bar No. 23805 (PHV Pending)
Craig J. Geraci, Jr.
Alabama Bar No. 3847-C62G (PHV Forthcoming)
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498
Email: Lewis.Kahn@ksfcounsel.com
       Craig.Geraci@ksfcounsel.com

**INTERIM CO-LEAD CLASS COUNSEL**

Bruce K. Packard
State Bar No. 15402300
W. Craig Stokley
State Bar No. 24051392
**RINEY PALTER, PLLC**
5949 Sherry Lane, Suite 1616
Dallas, Texas 75225-8009
Telephone: 214-461-1200
Facsimile: 214-461-1210
Email: bpackard@rineypalter.com
 cstokley@rineypalter.com

Stuart H. McCluer
**MCCULLEY MCCLUER PLLC**
1223 Jackson Avenue East, Suite 200
P.O. Box 2294
Oxford, Mississippi 38655
(662) 236-1401
smccluer@mcculleymccluer.com

**ADDITIONAL COUNSEL FOR PLAINTIFFS AND THE CLASS AND SUBCLASS**

**COUNSEL FOR PLAINTIFF SEAN TURNBOW**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 26, 2012, I electronically filed the foregoing document via the CM/ECF electronic filing system and served all counsel of record pursuant to Local Rule 5.1(d) and Fed. R. Civ. P. 5(b)(2)(E).

                                        /s/ Jonathan Bridges

2147158v1/012370