**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SEAN TURNBOW, WILLIAM *and* MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, *and* ANTHONY TAYLOR, *on behalf of themselves and all others similarly situated*, | **CIVIL ACTION NO.: 3:11-CV-1030-M** |
| Plaintiffs, | |
| vs. | **CLASS ACTION** |
| LIFE PARTNERS INC., LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, *and* R. SCOTT PEDEN, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

BACKGROUND.................................................................................1

*Breach of Fiduciary Duty*.................................................................4

*Aiding and Abetting Breach of Fiduciary Duty*.................................5

*Breach of Contract*........................................................................5

*Violation of California Unfair Competition Law*...............................5

ARGUMENT...................................................................................6

    A.    The Legal Standard..................................................................6

        1.    Prerequisites for Class Certification..................................6

        2.    Qualifications of Class Counsel.......................................7

    B.    The Class and Subclasses..........................................................8

    C.    This Action Should Be Certified as a Class and Subclass Action Pursuant to Rule 23...................................................................................9

        1.    The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a).....................................................................9

            a.    The Class and Subclasses Satisfy the Numerosity Requirement.......................................................9

            b.    There Are Common Questions of Law or Fact...................10

            c.    Proposed Class and Subclass Representatives' Claims Are Typical.......................................................................12

            d.    Proposed Class and Subclass Representatives Will Adequately Protect the Interests of the Class and Subclass............14

        2.    This Action Satisfies Rule 23(b)(3)........................................16

            a.    The Claims For Breach Of Fiduciary Duty And Aiding And Abetting Breach Of Fiduciary Duty Satisfy Rule 23(b)(3)........16

            b.    The Claims For Breach of Contract Satisfy Rule 23(b)(3).....18

c. The Claims For Violation of California UCL Satisfy Rule 23(b)(3)……………………………………………………………...20

d. All Class and Subclass Members Are Similarly Harmed……21

e. The Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action………………24

D. Susman Godfrey and KSF Should Be Appointed Class Counsel Under to Rule 23(g)…………………………………………………………………..…25

CONCLUSION……………………………………………………………………25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997)……………………………………………7, 9

*Aranda v. Ins. Co. of North Am.*, 748 S.W.2d 210 (Tex. 1988)………………………………..19

*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003)…………………………………..22

*Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001),
*clarified on rehearing en banc*, 279 F.3d 313 (5th Cir. 2002)……………………………6, 14

*Brazil v. Dell Inc.*, C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010)………..21

*Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684 (S.D. Fla. 2008)…………………17, 18

*Chauvin v. Chevron Oronite Co., LLC*, 263 F.R.D. 364 (E.D. La. 2009)…………………...10, 13

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010)………………………………………..10

*Eisen v. Carlisle & Jacquelin*, 94 S. Ct. 2140 (1974)………………………………………..…9

*ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867 (Tex. 2010),
reh'g                                 denied                                (Oct.                                1,
2010)…………………………………………………………………....22

*Ewert v. Ebay Inc*., 07-02198, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)…………………...24

*Henry v. Cash Today, Inc.* 199 F.R.D. 566 (S.D. Tex. 2000)………………………..10, 13, 16, 24

*In re Conseco Life Ins. Co. Cost of Ins. Litig*., No. ML 04-1610, 2005 WL 5678790
(C.D. Cal. 2005)…………………………………………………………………………12

*In re Dynegy, Inc., Sec. Litig.*, 226 F.R.D. 263 (S.D. Tex. 2005)………………………………..24

*In re Enron Corp. Securities*, No. MDL 1446, 2006 WL 1662596
(S.D. Tex. June 7, 2006)……………………………………………………………...17, 18

*In re Great Southern Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212
(N.D. Tex. 2000)……………………………………………………………………passim

*In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119 (S.D.N.Y. 2001)…………………..13

*J.D. v. Nagin*, 255 F.R.D. 406 (E.D. La. 2009)………………………………………………...9

*James v. City of Dallas,* 254 F.3d 551 (5th Cir. 2001)……………………………………………..10

*Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011)…………………………..12, 21

*Koh v. S.C Johnson & Son, Inc.*, No. C-09-00927, 2010 U.S. Dist. LEXIS 654
(N.D. Cal. Jan. 5, 2010)…………………………………………………………………………...6

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th 1997)………………………………10

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007)……………………………5

*Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010)………………..12, 21

*Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551 (5th Cir. 2011)………………………………...7

*Mullen v. Treasure Chest Casino,* 186 F.3d 620 (5th Cir. 1999)………………………………9

*Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059
(C.D. Cal. 2003)………………………………………………………………………………22

*Nichols v. Mobile Board of Realtors, Inc.,* 675 F.2d 671 (5th Cir. 1982)………………………16

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,*
637 F.2d 1014 (5th Cir. 1981)…………………………………………………………………...13

*Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598 (5th Cir. 2006)………………………22

*Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002)…………………………………………..13

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)…………………24

*The Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
3:02-cv-1152-M (N.D. Tex. Jan. 27, 2012)……………………………………………………...17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)………………………………24

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)………………………………….10, 12

*Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, (Ct. App. 2000)……………………………6

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq*……………………………………….………6, 22

**Rules**

Fed. R. Civ. P. 23………………………………………………………………………passim

v

Plaintiffs Sean Turnbow, William and Mary Rice, Robert Yoskowitz, and Frederick Vieira ("Plaintiffs") respectfully submit this motion seeking: (i) certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3); (ii) appointment of Plaintiffs as Class and Subclass representatives as described herein; and (iii) appointing Interim Co-Lead Counsel Susman Godfrey LLP and Kahn Swick & Foti, LLC ("KSF") as Class Counsel pursuant to Fed. R. Civ. P. 23(g).[1]

## BACKGROUND

Defendants are engaged in the secondary market for life insurance known as "life settlements." *See* LPHI 2010 Form 10-K at 3 attached to Plaintiffs' Appendix ("App.") as Exh. A. Defendant CEO Brian Pardo has said, "*We have ten years of doing this the exact same way…*" *See* Brian Pardo email attached to App. as Exh. B. Plaintiffs fully agree and submit that this case involves a common course of conduct perfectly suited for a class action.

Life settlement transactions involve the sale of a previously-issued life insurance policy. The purchaser takes an ownership interest in the policy and/or the benefits, assumes the obligation to pay premiums going forward, and expects to receive payment of the policy's death benefit when the insured dies. *See* Exh. A at pp. 3-5; ¶¶ 2-3, 7-8.[2]

According to LPHI's filings with the Securities and Exchange Commission, LPI plays a critical role in life settlement transactions between sellers and purchasers. *Id*. LPI and life settlement purchasers first enter into a standard, written, pre-printed, form contract that is entitled "Agency Agreement." *See* Exh. A at p. 5. As the title states, pursuant to the Agency Agreement, LPI agrees to "enter into a relationship of principal and agent" with each of its customers. *Id*. at 4

---

[1] Former Plaintiff Anthony Taylor filed a notice of dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on January 27, 2012. Dkt. 62. Defendants are Life Partners Inc. ("LPI"), Life Partners Holdings, Inc. ("LPHI"), Brian Pardo, and R. Scott Peden ("Defendants").
[2] All "¶__" references are to the Consolidated Class Action Complaint ("Complaint").

("We act as a purchasing agent for life settlement purchasers."). As agent, then, LPI agrees to "identify and assist" in the purchase of life insurance policies. *See* Exh. 2, 42, 49, 54, 58, 63 attached to Defendants' Motion to Dismiss Appendix ("Defs. Appendix") [Dkt. No. 42-1].

At LPI's corporate deposition on December 13, 2011, testifying on behalf of LPI, Defendant Peden conceded (1) that LPI obtains life expectancies from just one source, Dr. Donald Cassidy, on behalf of all of its retail customers, (2) that it does so as purchasing agent for its retail customers, and (3) that in doing so it owes the retail customers fiduciary duties. LPI Corp. Rep. Peden Dep. at 45:19-22; 47:5-8; 47:21-48:3; 48:11-15; 95:8-13 attached to App. as Exh. C. LPI intentionally structures its life settlement transactions in this manner to avoid being treated as securities under federal or state securities law. *See* Exh. A at p. 9 ("We have structured our settlement transactions to reduce the risk that they would be treated as securities under state or Federal securities law").

After LPI, in its capacity as an agent, identifies and assists purchasers in identifying supposedly attractively-priced life settlements, LPI and its retail customers enter into a second standard, written, pre-printed form contract that is entitled "Policy Funding Agreement." ¶ 8; Exh. C at 40:24-25 – 41:1-7. In that agreement, LPI retail customers purchase a fractional interest in the death benefits of a specified insurance policy. In exchange, customers pay a price set by LPI according to a formula that depends on the life expectancy assessment ("LE") of the insured. ¶¶ 10, 35, 37; LPI Corp. Rep. Carr Dep. at 25:8-13 attached as Exh. D.

Since 1999, as purchasing agent, LPI engaged Cassidy, a Nevada oncologist, to provide LEs for each life settlement transaction, and it priced the life settlements based on those LEs. Exh. D at 23:24 – 24:1. In fact, LPI exclusively used the LE calculations provided by Cassidy, who has no actuarial training or experience and does not have an actuary on staff. Exh. C at

138:12-15 – 139:1-11. Prior to hiring Cassidy, LPI did not conduct any meaningful due diligence on Cassidy's qualifications to act as a *de facto* actuary and, to this date, still does not know if Cassidy had any experience providing life expectancies prior to being retained by LPI. Exh. C at 122:24-25; 123:9-22. As of February 8, 2011, Cassidy had never researched the methodology used by life insurance underwriters. In fact, in the ten-plus years he has worked for LPI, Cassidy never modified his methodology or evaluated his track record on LEs. *Id.* at 87:8-12. LPI has compensated Cassidy at rates well in excess of market rates and did so in a manner that incentivized him to underestimate life expectancies. ¶ 13; Exh. C at 126:19-23 ("A. He is compensated on a retainer basis at $15,000 per month, and $500 for policies that we [LPI] close.").[3]

According to articles appearing in *The Wall Street Journal* and *The Life Settlements Report*, Cassidy grossly and systematically underestimated life expectancies and did so for years.[4] The Securities and Exchange Commission alleged the same, in far greater detail, in a Complaint filed last month against LPHI, Pardo, Peden, and David M. Martin.[5] LPI knew or should have known that Cassidy's LEs were way off the mark and yet continued to use them exclusively, gave Cassidy a $180,000 per-year pay raise for continuing to provide them, and did nothing to account for the gross inaccuracies. *See* Exh. G at ¶¶ 6-13; *see also* ¶¶ 12-15, 28-37, 61-65.

According to the results of a *Wall Street Journal* investigation that culminated in a December 21, 2010 article regarding LPI's business practices, LPI "sells a policy for about 2.4

---

[3] Because shorter LEs allow LPI to predict quicker and therefore larger returns for its retail customers, compensating Cassidy for policies that sell creates an incentive for Cassidy to provide shorter LEs.

[4] *See The Wall Street Journal* and *The Life Settlements Report* articles attached to App. as Exh. E and F; *see also* Exh. 3-12, 43-47, 50-53, 55-56, 59-61, and 64-65 attached to Defs. App.

[5] *See SEC v. Life Partners Holdings, Inc., et al.*, No. W-12-CA-00002 (W.D. Tex.  Jan. 3, 2012) Complaint attached to App. as Exh. G.

times what the owner is paid," *i.e.*, the "acquisition price" provided to Purchasers is 240% higher than the price at which LPI actually acquired the policy from the Seller. *See* Exh. E; ¶ 5. As a result, LPI profited enormously at the expense of its retail customers.

Following the articles in the *Wall Street Journal* and *The Life Settlements Report*, retail customers of LPI in California, Texas, and elsewhere – including Plaintiffs – filed class action lawsuits against the Defendants. The claims in the Complaint are breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, and a claim on behalf of the California Subclass for violations of California's Unfair Competition Law ("UCL").

### *Breach of Fiduciary Duty*

The Complaint alleges that, by relying solely on Cassidy's inaccurate life estimates, compensating him in a manner that incentivized him to deliver low rather than accurate LEs, and failing to monitor his performance or to apply any form of quality control to his estimation process, LPI breached its fiduciary duties owed to all Class members. *See* Ernst & Young LLP Audit Report attached to App. as Exh. H ("[W]e noted the Company did not have a formal process in place to assess 'actual to expected' life expectancies for contract maturities. A formal analysis, prepared quarterly, would provide management with an after the fact assessment of how accurate its initial Les were and if any adjustments need to be made to its underwriting process."); ¶¶ 52-58. Because of this breach, LPI was able to arrange life settlement transactions on terms that it could not have obtained had it secured reasonable life estimates, resulting in LPI's receiving larger fees than it would have received if it had complied with its fiduciary and contractual duties. ¶¶ 15, 57; Exh. D at 23:24-25 – 24:1. Class members are therefore entitled to restitution, damages, disgorgement, and any other equitable remedies that the Court may deem appropriate.

### *Aiding and Abetting Breach of Fiduciary Duty*

Plaintiffs allege that Defendants Pardo, Peden, and LPHI were aware of LPI's fiduciary duties to the Class, were aware that LPI had breached its duties, and provided substantial assistance to LPI in breaching its duties. ¶¶ 59-66. In particular, these defendants exercised control over LPI and were aware of and participated in its major business practices, including the creation of its agency relationship with the class, its reliance on Cassidy's life estimates, and the structuring of its relationship with Cassidy, including its compensation arrangements and lack of quality control over his estimating process. ¶¶ 61-62. Accordingly, Pardo, Peden, and LPHI are jointly and severally liable to all Class members as aiders and abettors of LPI's breach of fiduciary duty. ¶¶ 58, 66.

### *Breach of Contract*

As alleged in the Complaint, LPI, in its process of procuring and utilizing the services and LEs of Cassidy, breached its contractual obligations, including its duty to perform with care, skill, reasonable expedience and faithfulness, as well as the confidence and trust that each party will faithfully perform its obligations under the contract. ¶ 70. LPI's retention and monitoring of Cassidy and its use of his LEs violated these contractual obligations. ¶ 70.

### *Violation of California Unfair Competition Law*

The Complaint also alleges, on behalf of the California Subclass, violations of the UCL. The UCL "is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). A business practice is "unfair" for the purposes of a claim under the UCL when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers." *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 965, (Ct. App. 2000) (citation omitted).

Through the use of improper and inaccurate LEs, LPI, Pardo, and Peden have (1) directly or indirectly engaged in unlawful and/or unfair business acts and practices toward a person; (2) directly or indirectly obtained property by material misrepresentations and/or omissions; and (3) made, published, and disseminated materially untrue and misleading information. ¶ 73. LPI, Pardo, and Peden's acts and practices as described herein constitute unlawful or unfair business acts and practices. ¶ 75. Plaintiffs and proposed California Subclass representatives Frederick Vieira and Robert Yoskowitz are citizens of the State of California, relied on Defendants' omissions and misrepresentations, and were injured as a result.[6] ¶ 74, 77. Accordingly, Defendants LPI, Pardo, and Peden are liable to the California Subclass for breaches of California's Unfair Competition Law.[7] ¶¶ 72-80.

## ARGUMENT

### A.     The Legal Standards

Class certification is governed by Fed. R. Civ. P. 23. In order to qualify for class certification, an action must meet all the prerequisites of Fed. R. Civ. P. 23(a) and fit at least one of the case types of Fed. R. Civ. P. 23(b). *See Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001), *clarified on rehearing en banc*, 279 F.3d 313 (5th Cir. 2002). Appointment of Class Counsel is governed by subsection (g) of Fed. R. Civ. P. 23.

### 1. Prerequisites for Class Certification

Fed. R. Civ. P. 23 (a) sets forth four prerequisites for class certification: (1) the Class is

---

[6] California courts hold that a plaintiff who fails to receive the benefit bargained for because of a misrepresentation made by a defendant suffers sufficient injury to state a claim under the UCL. *See, e.g., Koh v. S.C Johnson & Son, Inc.*, No. C-09-00927, 2010 U.S. Dist. LEXIS 654, at *4-5 (N.D. Cal. Jan. 5, 2010). In contrast to the UCL count, the fiduciary and contract counts do not in any way involve allegations of misrepresentation.
[7] Cal. Bus. & Prof. Code §17200, *et seq.*

so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Class; and (4) the representative parties will fairly and adequately protect the interests of the Class. These four requirements are referred to as "numerosity," "commonality," "typicality," and "adequacy." *See Amchem Prods. v. Windsor,* 521 U.S. 591, 613 (1997).

"In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011). Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider "how a trial on the merits would be conducted if a class were certified." *Id.*, at 555 (citation omitted). This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials." *Id.*

## 2. Qualifications of Class Counsel

Fed. R. Civ. P. 23(g) provides that in appointing class counsel, the Court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class;

(Fed. R. Civ. P. 23(g)(1)(A)(i-iv)), and may consider any other matter "pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Furthermore, when "one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Fed. R. Civ. P. 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). Fed. R. Civ. P. 23(g)(4) provides that "[c]lass counsel must fairly and adequately represent the interests of the class."

**B.     The Class and Subclasses**

Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of (1) a Class, consisting of all persons in the United States who purchased or otherwise acquired fractional interests in life settlements, from or through LPI or LPHI for which Cassidy provided life expectancy assessments; (2) a Subclass (the "California Subclass"), represented by Plaintiffs Vieira and Yoskowitz, comprising those members of the Class who are residents of California and acquired Defendants' life settlements for violations of Cal. Bus. & Prof. Code § 17200, *et seq*.; and (3) a Subclass (the "Seller Subclass"), represented by Plaintiff Vieira, comprising those members of the Class who sold, after December 21, 2010 (the date the *Wall Street Journal* article was published), some or all of the life settlements they acquired from or through LPI or LPHI.

The Class Period ends in or around March 2011, when Defendants stopped using Cassidy as their sole-sourced LE "expert" and instead retained 21st Services to provide life expectancy assessments that were used by Defendants in connection with all retail transactions.[8] The Class is comprised solely of retail customers of LPI and/or LPHI. Excluded from the Class are institutional investors, Defendants, the officers and directors of LPI and LPHI at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

---

[8] In response to a question about when LPI starting getting LEs from 21st Services in addition to Cassidy's, Peden responded, "Early in the year, I'd say—well, I can't remember specifically the month. I'm seems like February, maybe, or March. Earlier this year." Exh. C at 48:23-25.

**C.   This Action Should Be Certified as a Class and Subclass Action Pursuant to Rule 23**

"[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 94 S. Ct. 2140, 2153 (1974) (citation omitted).

**1.   The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a)**

Fed. R. Civ. P. 23(a) requires that any proposed class action meet four requirements, known as "numerosity," "commonality," "typicality," and "adequacy." *Amchem,* 521 U.S. at 613. The proposed Class satisfies all four prerequisites of Fed. R. Civ. P. 23(a).[9]

**a.   The Class and Subclasses Satisfy the Numerosity Requirement**

Plaintiffs meet the numerosity requirement of Rule 23. Factors to be considered for this requirement include the number of potential class members, their geographic location, the potential value of each claim, the difficulties of bringing individual suits and other factors making the joinder of claims impracticable. *In re Great Southern Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 215 (N.D. Tex. 2000). "Courts in the Fifth Circuit have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement and there is no set number above or below which a class is considered to have or have not satisfied the numerosity requirement." *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009) (citing *Mullen v. Treasure Chest Casino,* 186 F.3d 620 (5th Cir. 1999)). While there is no absolute

---

[9] In accordance with Local Rule 23.2, Interim Co-Lead Counsel provide the following additional information: Plaintiffs' counsel have agreed to advance the money to fund this action. Counsel anticipate providing notice to all Class members for whom they are able to obtain a valid address by U.S. mail, and supplementing that notice with publication notice in a national newspaper such as the *Wall Street Journal*. Interim Co-Lead Counsel preliminarily estimate that the cost of such a notice program would be no greater than $30,000, and likely substantially less. Interim Co-Lead Counsel believe that figure is a rough approximation of the cost of a notice program, and are in the process of trying to gather the information needed for a more precise cost estimate. Further, at the November 16, 2011 status conference with the Court, the parties discussed with the Court the discovery needed for a class certification hearing and the estimated time necessary for such discovery. On February 6, 2012, Plaintiffs served a formal request for last known addresses of all class and subclass members. Plaintiffs' counsel have been retained in this action on a contingency basis and should Plaintiffs prevail in this action, counsel is entitled to make an application for an award of attorney's fees and for reimbursement of advanced costs, subject to Court approval.

requirement, "[c]ourts have regularly certified classes with less than one hundred members." *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010).

As of June 1, 2011, it is estimated that there are approximately 25,000 fractional interests for which Cassidy provided LEs and thus are at issue in this dispute. ¶47; *see also* LPHI Form 8-K (July 5, 2011) attached to App. as Exh. I ("Since its incorporation in 1991, LPI has completed over 132,000 transactions for its worldwide client base of approximately 28,000 high net worth individuals and institutions in connection with the purchase of over 6,400 policies totaling over $2.9 billion in face value.").[10] Further, LPI sells fractional interest in life settlements across the United States, including California.

### b.  There Are Common Questions of Law or Fact

Under Fed. R. Civ. P. 23(a)(2), there must be questions of law or fact which are common to the Class. As courts have held, this "is not a high burden." *Henry v. Cash Today, Inc.* 199 F.R.D. 566, 569 (S.D. Tex. 2000). The "commonality" requirement is satisfied "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th 1997).[11] "[T]his requirement is easily met in most cases." *In re Great Southern*, 192 F.R.D. at 215. "[T]he fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality." *Chauvin v. Chevron Oronite Co., LLC*, 263 F.R.D. 364, 369 (E.D. La. 2009) (quoting *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001)).

The Class and Subclasses satisfy the "commonality" requirement of Fed. R. Civ. P. 23(a)(2). Certification is appropriate here because the claims asserted are based on a common set

---

[10] On February 6, 2012, Plaintiffs requested from Defendants all documents sufficient to identify all Class Members.
[11] The Supreme Court has held that "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).

of facts and a common course of conduct by Defendants that impacted investors similarly.  *See In re Great Southern*, 192 F.R.D. at 215-216 ("Fed.R.Civ.P. 23(a)(2) requires that the Plaintiffs show that there are questions of law or fact common to the class. Although the plaintiffs are not required to show that every question of law and fact is common to the entire class, they must show that the basis for their action affects all potential class members...").

Plaintiffs contend that common issues of fact and law exist at least with regard to the following:

- whether LPI's use of Cassidy's life estimates constituted a breach of LPI's contractual or fiduciary duties to the Class;

- whether LPI's retention and monitoring of Cassidy constituted a breach of LPI's contractual and fiduciary duties to the Class;

- whether Cassidy's lack of experience, training, ongoing performance, and other credentials qualified him to provide LEs and whether Defendants knew or should have known that they did not; and

- whether Pardo, Peden, and LPHI (1) knew of the existence of the fiduciary relationship between LPI and the Class, (2) knew that LPI had breached its fiduciary obligations to the Class through its process of procuring, relying on, utilizing, and presenting the services and LEs of Cassidy, and (3) knowingly participated in and/or encouraged LPI's breaches of its fiduciary obligations.

These common questions of law and fact together constitute "the basis for [this] action" on behalf of the class and will be "substantially related to the resolution of the litigation." *In re Great Southern*, 192 F.R.D. at 216.

The California Subclass also satisfies the "commonality" requirement of Fed. R. Civ. P. 23(a)(2).  California Subclass Plaintiffs Vieira and Yoskowitz contend that Defendants violated the UCL. Certification is appropriate here because the UCL claim is also based on a common set of facts and a common course of conduct by defendants that impacted investors similarly, including:

11

- whether Defendants' statements regarding LPI's processes for calculating life expectancies were material and misleading and/or constituted breaches of LPI's contractual or fiduciary duties to the Subclass, therefore constituting unlawful and/or unfair business acts and practices in violation of the UCL;

- whether Defendants negligently disregarded that the LEs they obtained were inaccurate, therefore constituting unlawful and/or unfair business acts and practices in violation of the UCL;

- whether Defendants knew of the inaccuracy but failed to adjust their practices to account for this or use an alternative, reliable source of LEs; and

- whether the failure to disclose the incentives under which Cassidy operated was material and misleading, therefore constituting unlawful and/or unfair business acts and practices in violation of the UCL.

California courts have found that such common issues of fact and law are more than sufficient to support a finding of commonality, and ultimately class certification. *See, e.g.*, *Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (finding the requirements of Rule 23 had been met in a case under the UCL, and certifying a class based on affirmative misrepresentations to consumers); *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 543 (N.D. Cal. 2010) (certifying a class based on unfair business practices that caused harm to the plaintiff in violation of the UCL); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610, 2005 WL 5678790 (C.D. Cal. 2005) (certifying a class of UCL plaintiffs based on injuries tied to a breach of contract claim).

The Class and Subclass claims all depend on common contentions of such a nature that they are capable of classwide resolution—which means that the determination of their truth or falsity will resolve issues central to the validity of each one of the claims in one stroke. *See Wal-Mart Stores*, 131 S.Ct. at 2545.

### c.  The Proposed Class and Subclass Representatives' Claims Are Typical

Fed. R. Civ. P. 23(a)(3) requires class representatives to present claims that are typical of the Class. "The Fifth Circuit has held that the test for typicality is also not demanding." *Chauvin*, 263 F.R.D. at 369 (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). "The test for typicality focuses 'on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent.'" *Chauvin*, 263 F.R.D. at 369; *see also Henry*, 199 F.R.D. at 569. But the typicality "requirement… does not mean that all claims must be identical." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981); *accord Stirman*, 280 F.3d at 562. "In fact, the named representatives only need to be adequate and do not need to be the best or most typical of all possible representatives." *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001). "When the claims permeate from a similar course of conduct or transaction and share the same legal theory, factual differences will not defeat typicality." *Chauvin*, 263 F.R.D. at 369.

Plaintiffs' claims are typical under Fed. R. Civ. P. 23(a)(3). Plaintiffs and proposed class representatives seek disgorgement and/or damages permeating from the same course of conduct by the defendants, *i.e.*, the sale by or through LPI of fractional interests in life settlements for which Cassidy provided inaccurately short LEs. Plaintiffs and proposed Class and Subclass representatives, like all other Class members, suffered economic losses as a result of their purchases of these fractional interests at artificially inflated prices (due to Cassidy's artificially low LEs). *See* Agency and Policy Funding Agreements attached to Defs. App. as Exh. 3-12, 42-47, 49-56, 58-61, 63-65; ¶¶10, 12, 15. The evidence required to prove Plaintiffs' claims would establish the same violations by Defendants for every member of the Class. Nothing more is required to satisfy the typicality element of Fed. R. Civ. P. 23(a)(3).

13

### d. The Proposed Class and Subclass Representatives Will Adequately Protect the Interests of the Class and Subclass

Fed. R. Civ. P. 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." They must have no conflicts of interest with other members of the class, they must be sufficiently interested in the outcome to ensure vigorous advocacy, and their chosen counsel must be competent, experienced, qualified, and also able to conduct the litigation vigorously. *Berger*, 257 F.3d at 479-80.

Plaintiffs and proposed Class and Subclass representatives satisfy the "adequacy" requirements of Fed. R. Civ. P. 23(a)(4). First, there are no conflicts of interest between Plaintiffs and the other members of the Class and Subclasses. As set forth above, Plaintiffs, like the other Class, California Subclass, and Seller Subclass members, purchased retail fractional interests in life settlements sold by LPI and were damaged as a result of Defendants' breaches of contractual and fiduciary duties, Defendants' aiding and abetting of the same, and/or Defendants' violation of California's UCL. *See* Agency and Policy Funding Agreements attached to Defs. App. as Exhibits 3-12, 42-47, 49-56, 58-61, 63-65.

Class Representatives Sean Turnbow, William and Mary Rice, Robert Yoskowitz, and Frederick Vieira all purchased fractional interests in life insurance policies that utilized LEs provided by Cassidy and thus were overcharged at the moment they purchased those interests.[12] ¶¶ 10, 12, 15, 19-22. Further, Plaintiffs Yoskowitz and Vieira (together "California Subclass Plaintiffs"), both of whom are California residents[13], are proposed as California Subclass Representatives. ¶¶ 21-22. Additionally, Plaintiff Vieira is the proposed class representative for the Seller Subclass defined as all persons who, after December 21, 2010, sold some or all of their

---

[12] *See* Agency and Policy Funding Agreements attached to Defs. App. as Exhibits 3-12, 42-47, 49-56, 58-61, 63-65.
[13] *See* copy of Vieira's driver's license attached to App. as Exh. J; *see also* Yoskowitz request for address change attached to App. as Exh. K.

fractional interests in life insurance policies purchased or otherwise acquired from or through LPI or LPHI that utilized life expectancies provided by Cassidy.  On January 10, 2011, Plaintiff Vieira sold seven of ten fractional interests in life insurance policies purchased or otherwise acquired from or through LPI or LPHI that utilized inaccurately short life expectancies provided by Cassidy. *See* UWTC Regular Resale Completion Notices attached to Defs. Appendix as Exh. 13-19.

Accordingly, Plaintiffs will have to prove the same legal theories and standardized conduct as the absent Class members to establish Defendants' liability. Thus, Plaintiffs have the incentive to prove every element of each cause of action which would be presented by the individual members of the Class and Subclass were they to file individual actions. Further, there are no defenses unique to Plaintiffs.

With respect to the second adequacy prong, Plaintiffs have sufficient interest in the outcome to ensure vigorous advocacy. Plaintiffs all purchased fractional interests in life settlements that included LEs provided by Cassidy. Furthermore, Plaintiffs have already demonstrated their adequacy by actively prosecuting this case. *See* Declaration of Kim E. Miller ("Miller Decl.") attached to App. as Exh. 1. In their capacity as Plaintiffs, they have been monitoring and consulting with Interim Co-Lead Counsel in the prosecution of this case and actively participating in reviewing and responding to propounded discovery. *Id*. They have ably represented the Class and Subclass by overseeing and communicating with appointed Interim Co-Lead Counsel and keeping apprised of the ongoing developments in the case. *Id*.

Under Plaintiffs' watch, Interim Co-Lead Counsel have conducted an extensive investigation into Defendants, fully briefed Defendants' motion to dismiss, conducted the Rule 30(b)(6) deposition of LPI, filed a Motion to Compel Production of Documents, conducted the

deposition of a former LPI licensee, received and are in the process of reviewing thousands of pages of documents produced by Defendants, and scheduled Plaintiffs' depositions for late February of 2012. Thus, Plaintiffs meet the second adequacy prong of Fed. R. Civ. P. 23(a)(4).

Finally, Plaintiffs have retained attorneys with considerable experience in class actions and complex litigation who will fairly and adequately represent the Class. *See* Firm Resumes of Susman Godfrey and KSF attached to App. as Exh. L. As discussed below, proposed Class Counsel are competent, experienced, qualified, and capable of prosecuting this litigation on behalf of the Class and Subclasses. Plaintiffs have no conflicts of interest with the Class, are deeply invested in the outcome of this litigation, have retained highly qualified counsel, and thus are adequate Class and Subclass Representatives under Fed. R. Civ. P. 23(a)(4).

### 2.  This Action Satisfies Rule 23(b)(3)

The issues to consider under Fed. R. Civ. P. 23(b)(3) are predominance and superiority. *See also Henry*, 199 F.R.D. at 570. The instant case satisfies these requirements, as well. As Plaintiffs assert a number of recovery theories in this matter, the Court must evaluate each theory for common questions of law or fact. *In re Great Southern*, 192 F.R.D. at 217. Under the first part of the rule, the issues that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues, if any, that are subject only to individualized proof. *Id*. (citing *Nichols v. Mobile Board of Realtors, Inc.,* 675 F.2d 671, 676 (5th Cir. 1982)).

### a.  The Claims For Breach Of Fiduciary Duty And Aiding And Abetting Breach Of Fiduciary Duty Satisfy Rule 23(b)(3)

In this case there are no predominant individual issues regarding the claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. LPI's relationship with and actions towards the members of the class were the same in all cases. LPI served as the agent of all class members for purposes of these transactions. Exh. C at 45: 19-22; 47:5-8; 47: 21-48:3;

48:11-15; 95:8-13. The form agency agreements remained the same in all material respects throughout the class period. *See* Exh. C at 31:7-9; 48:15; 43:13-17 ("Q. Okay. Since 1999, when Dr. Cassidy began performing work in connection with contracts like these, the forms have been materially the same; is that correct? A. I would say materially the same, yes."). Finally, whether Defendants Pardo, Peden, and LPHI aided and abetted any breach of fiduciary duty by Defendant LPI will turn on factual questions about their knowledge and actions, which are common to the Class.[14]

Indeed, given that the liability focus in this case is the conduct of the *defendants*, it is difficult to discern any liability issues not common to members of the Class. *See In re Enron Corp. Securities*, No. MDL 1446, 2006 WL 1662596 at *9 (S.D. Tex. June 7, 2006) (certifying class claims and stating with regards to commonality that "[t]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."); *id.* at *17 ("Where a common nucleus of operative fact exists, the predominance factor is met.) (internal quotations omitted). As Defendant Pardo admitted, LPI has been doing things "the exact same way" for 10 years.[15]

Where, as here, members of a Class or Subclass are subject to the same alleged course of conduct from Defendants, common questions predominate and class certification is appropriate. *See* Order *The Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 3:02-cv-1152-M, at page 5 (N.D. Tex. Jan. 27, 2012) ("Here, the issues of law or fact common to the members of the putative class predominate over questions affecting individual class

---

[14] A claim for aiding and abetting a breach of fiduciary duty requires: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. Class certification of the claims for aiding and abetting a breach of a fiduciary duty is appropriate because none of the claim's elements requires reliance or any other factor unique to each class member." *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 698 (S.D. Fla. 2008).

[15] *See* p. 1 *supra*.

members.")[16]; s*ee also In re Great Southern*, 192 F.R.D. at 221 (finding the requirements of
Fed.R.Civ.P. 23(b)(3) had been met and certifying a nationwide class involving breach of
fiduciary duty related to investment vehicles); *In re Enron Corp. Sec. Litig.*, 2006 WL 1662596
at *18 (certifying class claims for breach of fiduciary duty "relat[ing] to the fiduciary duties of
care, investigation, prudence, and diversification, retaining employer matching contributions in
Enron stock, appointment of the Plan fiduciaries, failure to continually monitor those
administering the plans, [and] charges of disloyalty in acting in their own self interest."); *Bruhl*,
257 F.R.D. at 698 (certifying a class with claims for breach of fiduciary duty and aiding and
abetting breach of fiduciary duty, where plaintiffs argued that "the fiduciary duty owed each
plaintiff is the same to all members of the potential class and whether the individual defendants
assumed specific responsibility toward shareholders as a group is a merits issue that can be
resolved on a class wide basis."). Accordingly, Plaintiffs have satisfied Fed. R. Civ. P. 23(b)(3).

### b.  The Claims For Breach of Contract Satisfy Rule 23(b)(3)

Plaintiffs' third cause of action, breach of contract, also satisfies the predominance
requirement of Rule 23(b). LPI entered into two form printed contracts with Plaintiffs and all
Class Members: the Agency Agreement and the Policy Funding Agreement. Exh. C at 40:24-25
– 41:1-7; Plaintiffs' Policy Funding Agreements attached to Defs. App. as Exhibits 3-12, 43-47,
50-53, 55-56, 59-61, 64-65.   Again, the standard form contracts have remained materially the
same since 1999 when Cassidy alone began providing LEs to LPI through the end of the Class
Period. *See* Exh. C at 31:7-9; 48:15; 43:13-17.

Further, the function that LPI performs for an IRA transaction is essentially the same:
there is no difference in the pricing of the life settlement contracts depending on whether the
purchase is made through an IRA or not, and there is no difference in how the life expectancies

---

[16] The Order is attached to App. as Exh. M.

provided by are used for purchases made through an IRA. Exh. C at 44:8-25 – 45:1-22. Additionally, all retail investors, *i.e.*, all Class Members, received LEs provided by Cassidy. *Id.* at 39:2-9.

Further, the contract claim is based on LPI conduct that remained unchanged throughout the class period. LPI retained Cassidy without even inquiring into his qualifications or evaluating his past performance; LPI allowed Cassidy to determine life expectancies using a method that consistently results in inaccurate determinations; LPI failed to test the validity of Cassidy's method statistically or empirically and failed to require Cassidy to do so; and LPI compensated Cassidy with incentives for providing low, not accurate, life expectancies. ¶¶11-16, 67. In fact, LPI never engaged anyone *externally* to do a study or analysis regarding the accuracy of Cassidy's work. Exh. C. at 87:8-12 ("Q. LPI hasn't engaged anyone external to do an analysis or study of Dr. Cassidy's work? A. No. Q. Or its life expectancies in general. A. No."). And it likewise has not done any *internal* analysis of Cassidy's life expectancies. Exh. C at 87:20-23 (A. … no, I don't think we have kind of regular report or any analysis that's been done on – you know, on an ongoing basis as far as, you know, life expectancies or anything like that.").

Under Texas law, there is a "well established" ru1e that every contract contains a "common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done" and that "a negligent failure to observe any of these conditions" will support a claim for breach of contract. *Aranda v. Ins. Co. of North Am.*, 748 S.W.2d 210, 212 (Tex. 1988) (citation omitted). LPI breached its contractual obligations, including its duty to perform with care, skill, reasonable expedience and faithfulness, all that has been agreed to be done, as well as the confidence and trust that each party will faithfully perform his obligation under the contract, in its process of procuring and utilizing the services and LEs of Cassidy. ¶70. LPI's

19

retention and monitoring of Cassidy and its use of his LEs do not meet the contractual standards of skill, care and faithful performance that the investors were contractually entitled to receive. ¶70. As a result of these breaches, Plaintiffs, like all other Class members, suffered economic losses stemming from their purchase of fractional interests in life settlements sold by LPI. There are no individualized issues of law or fact that predominate over the questions of law and fact common to the Class.

There are also no variations in state law that could defeat predominance. As admitted by Defendants in their motion to dismiss, Texas law expressly governs the breach of contract claim pursuant to the Policy Funding Agreements.[17] Although the Agency Agreements contain no such choice of law provision, Texas law also governs these contracts. *See In re Great Southern*, 192 F.R.D. at 217-19 ("First, it is clear to this Court, contrary to Defendant's suggestions, that the contracts at issue were entered into in Texas, not the homes of its consumers.").[18] Therefore, the Court will only need to apply one legal standard, and thus the breach of contract claim is ideal for class certification. *See id.* at 217 ("if only the Texas law governs the contracts, as Plaintiffs contend, then the cases are ideal for certification as the presiding court will apply only one legal standard."). Therefore, class certification is appropriate for Plaintiffs' breach of contract claim.

### c.   The Claims For Violation of California UCL Satisfy Rule 23(b)(3)

Common issues also predominate in the UCL claim of the California Subclass. The California Subclass Plaintiffs, like all other subclass members, suffered economic losses as a result of their purchases of fractional interests in life settlements sold by LPI with understated life expectancies.

---

[17] *See* Plaintiffs' Policy Funding Agreements attached to Defs. App. as Exhibits 3-12, 43-47, 50-53, 55-56, 59-61, 64-65 ("This agreement shall be construed under the laws of Texas.").
[18] "Equally, any injury to the Plaintiff occurred in Texas, not the consumer's home… Furthermore, Texas clearly has a far greater interest in the outcome of this litigation than do other states… Without question, Texas bears the most significant relationship." *Id.* at 219.

Because the subclass was subjected to the same alleged course of conduct by defendants, common questions predominate and a class action is appropriate. *See., e.g., Johnson*, 275 F.R.D. at 288 (where a common and pervasive material misrepresentation was communicated to consumers, common issues underlying a UCL claim predominate); *Lymburner*, 263 F.R.D. at 543 ("Plaintiff ha[d] alleged that Defendant engaged in unfair business practices with respect to the loans that caused her harm.   Therefore, common issues will predominate on the UCL claim.").

As to the California Subclass, there are no predominant individual issues in this case. "Only the named plaintiff in an UCL class action case need show injury and causation," and the other California Subclass members are not required to prove reliance and damage.[19] *Lymburner*, 263 F.R.D. at 543 ("the 'individual circumstances of each class member's loan need not be examined because the class members are not required to prove reliance and damage.'") (citation omitted). Indeed, it is difficult to discern any liability issues not common to members of the California Subclass. Where, as here, members of a class or subclass are subject to the same alleged course of conduct from Defendants, common questions predominate and class certification is appropriate. California Subclass Plaintiffs have satisfied Fed. R. Civ. P. 23(b)(3).

### d.  All Class and Subclass Members Are Similarly Harmed

With respect to disgorgement, Plaintiffs' and Class members' claims against Defendants for breaches of fiduciary duty all warrant the same equitable remedy: disgorgement of fees and/or profits realized by Defendants as a result of breaches of fiduciary duty. Similarly, California Subclass Plaintiffs and Subclass members are also entitled to disgorgement of fees

---

[19] In California, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," *Brazil v. Dell Inc.*, C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) (citation omitted).

and/or profits as a result of Defendants' violations of Section 17200, *et. seq.* of the Cal. Bus. & Prof. Code. *See ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010), reh'g denied (Oct. 1, 2010) ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty."); *see also Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1086 (C.D. Cal. 2003).

Alternatively, with respect to damages, Defendants' breaches of their contractual obligations entitle Plaintiffs and Class members to damages commensurate with the amount overpaid for interests in life settlements that utilized LEs provided by Cassidy. While the amounts of disgorgement and damages will vary among Class members, the methodology applied for the calculations will be uniformly applied to all Class and Subclass members. Experts will opine regarding the true market value of Plaintiffs' fractional interests at the time of purchase, and the methodology applied to all Class and Subclass members to calculate disgorgement and damages will not change. *See* Exh. M at page 5 (In certifying a class, the Court stated, "Although the extent of damages suffered by each class member will vary, individual damages can be calculated."); *see also Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 602 (5th Cir. 2006) ("the necessity of calculating damages on an individual basis will not necessarily preclude class certification."); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) ("relatively few motions to certify a class fail because of disparities in the damages suffered by the class members").

The claims of the Class are rooted in the fact that Cassidy's method for determining LEs systematically underestimated the amount of time that would pass before Class members would receive a return on their investment. The size of this understatement is best determined by looking at a pool of LEs. *See* Mark Embry Email attached to App. as Exh. N (stating that "the

key is looking at a whole portfolio of policies, and not just a few policies"). Once the magnitude

of the systematic understatement is determined, it can be "reversed out" to develop "true" LEs

associated with each policy at the time class members acquired their interests.  Plaintiff's

damages expert will then derive a discount rate that is observable in the market for life

settlements by calculating the internal rate of return associated with the policy's cash flows given

the LE. [20] This observed discount rate can then be used, in conjunction with the "true" LEs, to

determine the true value of the life settlement interests purchased by class members at the time of

purchase. Damages will then be the difference between these values and the amounts paid for

Class members' life settlement interests.

A review of data recently produced by Defendants demonstrates that Defendants obtained

LEs from both Cassidy and 21st Services for approximately 84 life settlement policies sold to

retail customers during a portion of the Class Period.  Miller Decl. at ¶ 19 attached as Exh. 1.

The average LE prepared by Cassidy was 55 months, while the average LE prepared by 21st was

101 months, *nearly double* Cassidy's number for the same policies.  *Id.* Defendants used only the

Cassidy LEs in Class members' contracts.[21]

The plan of allocation of damages among all Class members, prepared with expert

assistance, will take into account such factors as the varying amounts paid by Class members to

purchase their fractional shares.  Such elements do not change the fact that Class members were

universally harmed by their purchases of fractional interests in policies overvalued by Cassidy's

systematically low LEs, but merely reflect the size of their *pro rata* share of any class-wide

relief.  Plaintiffs have shown that there will be sufficient data to reasonably calculate damages on

---

[20] The term "discount rate" refers to the interest rate used in a discounted cash flow analysis to determine the present value of future cash flows.  A discount rate takes into account the time value of money and any risk or uncertainty associated with the anticipated future cash flows (in this case, the uncertainty of whether any given insured would outlive his/her estimated life expectancy).
[21]   The underlying data from Defendants is attached to App. as Exh. O.

a class-wide basis without individualized inquiry, let alone without any individualized inquiry predominating over the numerous, common questions that are addressed in this litigation. *See Ewert v. Ebay Inc.*, 07-02198, 2010 WL 4269259, at *10 (N.D. Cal. Oct. 25, 2010) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 564-65 (1931) (holding that juries should be permitted to form a "reasonable and probable estimate" of damages when the precise amount of damages is uncertain)).

### e.   The Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

The class action device is a superior method for resolving the claims in this action because it provides the fairest and most efficient adjudication. Indeed, in the absence of a class-wide adjudication of certain class claims, those claims would likely never be heard.  Courts have long recognized that the class action is not only a superior method to fairly and efficiently adjudicate a controversy involving a large number of consumers injured by violation of the law, but also that there may be "no realistic alternative." *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

Here, the size of the damages and other relief that Class members – and even the named Plaintiffs here – may recover may be insufficient to justify the prosecution of separate, individual actions. *Henry*, 199 F.R.D. at 573.  The issues here are complex and would invariably require – regardless of whether on a class or individual basis –  the assistance of experts, significant discovery, and significant attorney time. Courts in the Fifth Circuit recognize the efficacy of the class action device for redressing injury to large groups of individuals harmed by a common set of operative facts. Class action is often "the only way to afford relief to those plaintiffs whose claims are too small to permit them to bring individual suits." *In re Dynegy, Inc., Sec. Litig.*, 226 F.R.D. 263, 282 (S.D. Tex. 2005). The alternative to certifying the Class would be to unleash

potentially hundreds of individual actions into the judicial system, which could result in varying adjudications of liability, or risk that many if not most Class members would be unable to seek redress because they could not afford to proceed on an individual basis. A class action is therefore clearly the superior method of adjudicating the claims in question.

### D.      Susman Godfrey and KSF Should Be Appointed Class Counsel Under to Rule 23(g)

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." The proposed Class is represented by Susman Godfrey and KSF, which have both been appointed as Interim Co-Lead Counsel in this matter. As "Courts use the same qualification criteria for designating interim counsel as are used for appointing class counsel," this Court has already found Susman Godfrey and KSF to be qualified to act as Class Counsel. *See* Dkt. No. 29.

This Court previously noted that both firms and their attorneys have "significant experience litigating class actions and other complex litigation, knowledge of the applicable law, and the ability to dedicate the resources required to litigate the matter." *Id.*[22] Further, the firms identified and investigated the claims in this action from the inception of the litigation, fully brief Defendants' motion to dismiss, are engaged in an extensive discovery process, are conducting the depositions of key individuals with information regarding the allegations in the Complaint, and are coordinating with consultants and potential experts in preparation for trial. Accordingly, Susman Godfrey and KSF satisfy the requirements of Fed. R. Civ. P. 23(g) and should be appointed Co-Class Counsel.

### CONCLUSION

For the reasons set forth herein, Plaintiffs' motion should be granted.

---

[22] *See also* Exh. L.

Dated: February 15, 2012

Respectfully submitted,

___/s/ Kim E. Miller_____

Lewis S. Kahn
Louisiana Bar No. 23805 (Admitted PHV)
Craig J. Geraci, Jr.
Alabama Bar No. 3847-C62G (Admitted PHV)
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498
Email: Lewis.Kahn@ksfcounsel.com
      Craig.Geraci@ksfcounsel.com

Kim E. Miller
California Bar No. 178370 (Admitted PHV)
**KAHN SWICK & FOTI, LLC**
500 5th Avenue, Suite 1810
New York, NY 10110
Tel: (212) 696-3730
Fax: (504) 455-1498
Email: Kim.Miller@ksfcounsel.com

Terrell W. Oxford
Texas State Bar No. 15390500
Jonathan Bridges
Texas State Bar No. 24028835
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: 214-754-1900
Facsimile: 214-754-1933
Email: toxford@susmangodfrey.com
      jbridges@susmangodfrey.com

Steven G. Sklaver
California Bar No. 237612 (Admitted PHV)
Amy T. Brantly
California Bar No. 210893 (Admitted PHV)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ssklaver@susmangodfrey.com
      abrantly@susmangodfrey.com

**INTERIM CO-LEAD CLASS COUNSEL**

Bruce K. Packard
State Bar No. 15402300
W. Craig Stokley
State Bar No. 24051392
RINEY PALTER, PLLC
5949 Sherry Lane, Suite 1616
Dallas, Texas 75225-8009
Telephone: 214-461-1200
Facsimile: 214-461-1210
Email: bpackard@rineypalter.com
      cstokley@rineypalter.com

Stuart H. McCluer
Mississippi Bar No. 101366 (Admitted PHV)
MCCULLEY MCCLUER PLLC
1223 Jackson Avenue East, Suite 200
P.O. Box 2294
Oxford, Mississippi 38655
(662) 236-1401
Email: smccluer@mcculleymccluer.com

**COUNSEL FOR PLAINTIFF SEAN
TURNBOW**

**ADDITIONAL COUNSEL FOR
PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2012, I electronically filed the foregoing document via the CM/ECF electronic filing system and served all counsel of record pursuant to Local Rule 5.1(d) and FED. R. CIV. P. 5(b)(2)(E).

__/s/ Kim E. Miller_____
Kim E. Miller

## CERTIFICATE OF CONFERENCE

I hereby certify that on February 14, 2012, pursuant to Local Rule 7.1, I conferred with counsel for Defendants regarding the relief requested in this motion. The requested relief was opposed.

_/s/ Craig J. Geraci, Jr._____
Craig J. Geraci, Jr.