**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SEAN TURNBOW, WILLIAM *and* MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, *and* ANTHONY TAYLOR, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> LIFE PARTNERS INC., LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, *and* R. SCOTT PEDEN, <br><br> Defendants. | CIVIL ACTION NO.: 3:11-CV-1030-M <br><br> **CLASS ACTION** |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

I.     **<u>Preliminary Statement</u>**

Plaintiffs have satisfied all the requirements for Class certification under Rule 23. The most significant legal and factual issues in this case concern the entire Class, including that LPI acted in a fiduciary capacity when it provided life expectancy estimates from Dr. Cassidy on policies owned by Class members,[1] and that Dr. Cassidy's life expectancy estimates were overstated and should be corrected – as LPHI's restated financial statements have already done with regard to the policies it owns.[2] Certainly there is efficiency to be gained by certifying the class rather than trying hundreds if not thousands of remarkably similar cases one at a time.

Most of Defendants' efforts to defeat class certification amounts to quibbling over responses given by non-lawyer Plaintiffs whose depositions demonstrate that they understand the gravamen of their claims, are vigorously prosecuting this litigation and supervising counsel, and are readily meeting their fiduciary obligations to the Class. Defendants also claim that Plaintiffs do not meet the commonality requirement despite the fact that the Class members have suffered the same harm, and despite the fact that answers to common questions of law and fact will resolve issues that are central to the validity of each one of the Class members' claims in "one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Further, Defendants' conclusion that individual issues predominate as to liability and damages is wrong. Plaintiffs' expert declarations confirm simple disgorgement is uncomplicated and in no way requires a

---

[1] *See* App. 000109; Peden Dep. at 45:19-22 ("Under the agency agreements with its retail customers, LPI acts on behalf of the purchasers as their agent, correctly—is that correct? That's correct."); App. 000110-000111; *see also* Peden Dep. at 47:21-48:3; App. 000114; Peden Dep. at 95:8-13 ("If I understand you right, Mr. Peden, to the extent that the relationship is set out in the agency agreement and special power of attorney, Life Partners, LPI, agrees that it has a fiduciary responsibility under that agreement? As agent for the principal, yes.").

[2] *See* LPHI 2011 Form 10-K, http://ir.lphi.com/annuals.cfm, at 71 ("Impairment of policies is generally caused by the insured significantly exceeding the estimate of the original life expectancy, which causes the original policy costs and projected future premiums to exceed the estimated maturity value. We recorded $6,212,150 and $2,139,183 of impairment for the fiscal 2011 and 2010, respectively."); *see also id*. at 57, 66.

highly individualized analysis. *See* Supp. App. 004-97. Alternatively, Plaintiffs have provided a damages formula that can easily be applied on a Class-wide basis. *See* Supp. App. 0013; Fuller Decl. at ¶¶27-28. In each of these respects, this is the quintessential case for class certification, and Plaintiffs' Motion should be granted.

## II. The Action Meets All the Requirements for Certification Under Rule 23

### A. Plaintiffs Satisfy the *Wal-Mart* Commonality Test

The Supreme Court recently held that in order to meet the commonality requirement under Rule 23(a)(2), the claims of every class member must "depend upon a common contention .... of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart*, 131 S.Ct. at 2551).

Plaintiffs' breach of contract and fiduciary duty claims are based on the theory that by relying solely on Cassidy's systematically underestimated LEs, compensating him in a manner that incentivized him to deliver inaccurate LEs, and failing to apply any form of quality control to his estimation process, LPI breached its contractual and fiduciary duties owed to the Class. *See* Motion for Class Certification ("Motion") at 4-5. Thus, the common questions here include whether LPI's use of Cassidy's LEs and whether LPI's retention and monitoring of Cassidy constituted a breach of LPI's contractual and fiduciary duties to the Class. These questions will have common answers because LPI and the Class members stand in the same positions relative to one another. *See Chieftain Royalty Co. v. QEP Energy Energy Co.*, CIV-11-212-R, 2012 WL 896412, at *3 (W.D. Okla. Mar. 16, 2012); s*ee also* Motion at 11.

Here, LPI owed the same contractual and fiduciary duties to each Class member by virtue

of the Agreements entered into with each Class member, each Class member purchased life settlements whereby LPI utilized only LEs prepared by Cassidy, and the overpayment for life settlements due to the use of Cassidy's inaccurate LEs by LPI extend across the Class. Accordingly, all Class members' claims depend on resolving these common issues of law or fact, and the determination of the truth or falsity of these allegations "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke." *Perry*, 675 F.3d at 840.

Unlike the putative class at issue in *Wal-Mart*, Plaintiffs here do not allege numerous individual wrongful acts by multiple actors chained together only by the same legal theory of relief, but rather a common course of conduct applicable to each Class member by the same actor resulting in the same harm to many persons. *See id*. at 2552 ("Here respondents wish to sue about literally millions of employment decisions at once."). The "glue," *see id.,* here is Plaintiffs' allegation that LPI wrongfully relied solely on Cassidy's systematically underestimated LEs for every Class member's life settlement investment.[3]

Thus, the Class and Subclass members have demonstrated commonality because they suffered the same injury—overpayment for fractional interests in life settlements at the time of purchase due to Cassidy's inaccurate LEs. *See Wal-Mart*, 131 S.Ct. at 2551 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'").[4]

---

[3] The 17200 Subclass also satisfies the commonality requirement. The common questions related to this claim include whether Defendants disregarded that the LEs they obtained were inaccurate, therefore constituting unlawful and/or unfair business acts and practices in violation of the UCL, and whether Defendants knew of the inaccuracy but failed to adjust their practices to account for this or use an alternative, reliable source of LEs. The answers to these questions will resolve each class member's individual claim. *See* Motion at 11-12; *see also Johns v. Bayer Corp.*, 09CV1935 AJB POR, 2012 WL 368032, at *3-4 (S.D. Cal. Feb. 3, 2012) (post *Wal-Mart* case certifying a class alleging a UCL claim).

[4] Plaintiffs also assert a claim for aiding and abetting breach of fiduciary duty against Defendants LPHI, Pardo, and Peden. The central, common questions here are whether a fiduciary relationship existed, whether LPHI, Pardo, and Peden knew of the fiduciary relationship, and whether LPHI, Pardo, and Peden

### B. All the Proposed Class Representatives Are Adequate and Typical

The Fifth Circuit has described "[t]he adequacy requirement [as one that] mandates an inquiry into ... the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482 (5th Cir. 2001) (citation omitted). "[C]lass representatives need not be legal scholars and are entitled to rely on counsel" so long as they "know more than that they were 'involved in a bad business deal.'" *Buettgen v. Harless*, 3:09-CV-791-K, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011) (Kinkeade, J.) (citation omitted). It is well settled that "class representatives are not required to have a complete knowledge of the case." *Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 503 (S.D. Tex. 2004). Moreover, Courts outside this Circuit have developed a standard of "striking unfamiliarity" to assess a representative's adequacy. *See Tsirekidze v. Syntax-Brillian Corp.*, CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009); *see also Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994).

The Fifth Circuit has held that the test for typicality is "not demanding." *Stott v. Capital Fin. Services, Inc.,* 277 F.R.D. 316, 325 (N.D. Tex. 2011) (Furgeson, J.) (citations omitted). "Typicality does not require a complete identity of claims… If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (citation omitted).[5]

#### i. Sean Turnbow is Adequate and Typical

Defendants cherry pick a handful of out-of-context excerpts from Sean Turnbow's

---

were aware they were participating in the breach of that fiduciary relationship. The answers to these questions will also resolve each Class member's individual claims in "one stroke." *Perry*, 675 F.3d at 840.
[5] Defendants use a page and a half of their opposition to argue that Plaintiffs are not "typical or adequate vis-à-vis the absentee class members who purchased viaticals and not life settlements." Def. Opp. at 6-7. However, Plaintiffs are only seeking to represent Class members who purchased life settlements. *See* ¶43 of Complaint [Dkt. No. 32].

deposition transcript in an attempt to depict him as an inadequate Class representative. Even a cursory review of Mr. Turnbow's deposition transcript readily demonstrates his understanding of the procedural history of the case and the Complaint's theory and causes of action. Indeed, it is abundantly clear that Mr. Turnbow is taking an active role in and controlling the litigation and vigorously protecting the interests of absent class members. *See*, *e.g.*, Supp. App. 00100-04, 00109, 00111-13; Turnbow Dep. at 23:11-22; 23:23-24:1; 36:21-25; 38:8-17; 40:15-25; 144:13-22; 146:19 – 147:7; 147:22 – 148:1-13. Among other things, Mr. Turnbow testified that he spoke to attorney McCluer "four or five" times prior to engaging him as counsel, that he researched the qualifications of proposed Co-Lead Counsel Susman Godfrey, and that he understands he owes fiduciary duties to the absentee Class members "to look out for their best interests, and to communicate with [his] attorneys about the details of the case, the progress of the case, and provide any information that they may ask and work with them, and all details pertaining to it." Supp. App. 00106-08; Turnbow Dep. at 139:23 – 140:4; 140:9-16; 140:24 – 141:24.

      Defendants argue that Mr. Turnbow is inadequate because he deferred to counsel to answer questions regarding the nature of damages he is seeking, he saw the requests for production the day before his deposition, and he "could not commit to being there for the entirety of the trial." Def. Opp. at 8-9. None of this renders Mr. Turnbow inadequate by any stretch. Mr. Turnbow demonstrated a firm grasp on the nature of damages he is seeking—he simply could not quantify the exact amount of damages. *See* Supp. App. 00109; Turnbow Dep. at 144:13-22. Mr. Turnbow is also entitled to rely on counsel because he is not a "legal scholar." *Buettgen*, 2011 WL 1938130, at *5. Regarding Defendants' Request for Production, he testified that he provided all documents responsive to the requests. *See* Supp. App. 00105; Turnbow Dep. at

5

76:14-17. Finally, Mr. Turnbow testified that if he is called upon to testify at trial, he will. *See* Supp. App. 00109-10; Turnbow Dep. at 144:13-22; 145:5-7.

Additionally, Defendants contend that Mr. Turnbow is atypical because he testified that Cassidy did not need to have actuarial experience or training in order to provide LEs. In truth, Mr. Turnbow correctly testified that he and the Class members were harmed "by the fact that Dr. Cassidy was hired by LPI… and by hiring him, being the only person making the actuaries [LEs], we paid too much for these policies, myself and the class, because those -- those life expectancies were just too low, consistently." Supp. App. 00109; Turnbow Dep. at 144:13-22. The core allegation of the Complaint is that Cassidy "consistently" underestimated LEs and life settlements were overpriced as a result, not whether Cassidy needed specific actuarial experience or training in order to provide LEs. *See*, *e.g.*, ¶¶55, 61.

### ii. Mary Rice and William Rice Are Adequate and Typical

Defendants contend that Mary and William Rice (the "Rices") lack a clear understanding of the duties of a class representative and the bases for the claims against certain Defendants. Def. Opp. at 11. In support, once again, Defendants provide the Court with out-of-context snippets in an attempt to paint an inaccurate picture of the Rices, while conveniently ignoring that the Rices demonstrated their willingness and ability to take an active role in and control the litigation and to protect the interests of absentees, their familiarity with key pleadings, their understanding of the general duties as class representatives, and their understanding of their general bases for their claims. For example, Mary Rice testified that her duties were "[t]o keep the best interests of the class in mind… to act on their behalf because they're not here. It's not just about me." Supp. App. 00126; Mary Rice Dep. at 255:14-23.

Further, Mary Rice accurately testified that Defendants in this matter are LPI, LPHI,

6

Brian Pardo, and Scott Peden (Supp. App. 00119-20; Mary Rice Dep. at 229:25 – 230:2); that Plaintiffs are not asserting fraud claims (Supp. App. 00119; *id*. at 229:8-10); that the cases were consolidated in Texas in 2011 (Supp. App. 00121; *id*. at 231:8-14); that Pardo owes a fiduciary duty to Plaintiffs (Supp. App. 00121; *id*. at 231:22-24); that she is not directly representing the 17200 Subclass (Supp. App. 00129; *id*. at 260:13-16); and that she, like the other Class members, suffered damages at the moment of purchase (Supp. App. 00122, 00123-24, 00130; *id*. at 236:7-9; 239:25 – 240:2; 261:1-21). These are certainly not the responses one would expect from a Class representative who is "strikingly unfamiliar" with this case. *See Tsirekidze*, 2009 WL 2151838.[6]

William Rice testified that he reviewed his files and provided all relevant documents to his counsel (Supp. App. 00137-38; William Rice Dep. at 12:25 – 13:2); understands there is no RICO claim here despite Defendants' efforts to confuse him (Supp. App. 00142; *id*. at 97:14-17); understands there is no contractual relationship with LPHI, Pardo, or Peden (Supp. App. 00144; *id*. at 106:10-21); knows he owes a fiduciary duty to the Class (Supp. App. 00143; *id*. at 101:7-10); and he wants to represent the Class because he suffered damage and thinks he and the Class members are "all pretty much the same" (Supp. App. 00140-41; *id*. at 94:25 – 95:1).

Defendants' argument that the Rices are also atypical because they did not read any of the documents prior to signing them is legally incorrect. Def. Opp. at 10.[7] This fact is irrelevant

---

[6] Mary Rice also testified that prior to filing suit she contacted several lawyers (Supp. App. 00118; Mary Rice Dep. at 224:6-9 & 20-25); she approved the consolidated amended complaint (*id*. at 246:12-20); she will attend a trial in this matter even if it lasts two weeks (*id*. at 255:8-13); she knew that the motion to dismiss is currently pending (Supp. App. 00131-32; *id*. at 263:14-25-264:1-6); she reviewed the motion for class certification (Supp. App. 00132; *id*. at 264:7-16); and she has communicated with counsel on approximately fourteen separate occasions (Supp. App. 00127; *id*. at 256:7-11 & 259:8-12).

[7] Defendants argue that "both Rices testified that it is not their policy to review documents before signing them." Def. Opp. at 10. However, when questioned about whether it is Mr. Rice's practice to review documents before signing them, he replied, "Most of the time, yes." Supp. App. 00139; William Rice Dep. at 18:16-18.

7

here, because reliance is not an element of breach of contract or fiduciary duty or the aiding and abetting claims. *See Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 698 (S.D. Fla. 2008); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. Supp. App.—Houston [14th Dist.] 2008, pet. denied); *Myan Mgmt. Group, L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750, 754 (Tex. App—Dallas 2009, no pet.).

The Rices, like all Class members, are bound by the terms of the Agreements and are presumed to know their contents whether or not they read them. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134, n.37 (Tex. 2004) (citation omitted); *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009); *Cincinnati Ins. Co. v. Guccione*, 308 Ill. Supp. App. 3d 220 (Ill. Supp. App. Ct. 2d Dist. 1999) (failure to read his contract is not an absolute bar to his right to recover for a breach of fiduciary duty). "Differences in the extent to which class members read and understood Block's standard documents will not defeat certification on the contract claim because, under Illinois law [as in Texas], parties to a contract 'cannot avoid their obligations under it by showing that [they] did not read what [they] signed.'" *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 84 n.4 (N.D. Ill. 1997).[8]

### iii. Robert Yoskowitz is Adequate and Typical

Defendants piece together misleading excerpts of testimony in an attempt to portray Mr. Yoskowitz as an inadequate class representative. *See* Def. Opp. at 12-14. A proposed Class representative is not required to pass a memory test or have "detailed knowledge regarding his claims" to be considered adequate. A proposed Class must merely demonstrate "the willingness and ability of the representatives to take an active role in and control the litigation and to protect

---

[8] Defendants, without offering any authority to support the argument, also claim that the Rices are atypical because they are not accredited investors. Def. Opp. at 9. However, the Rices claims still arise from the exact same course of conduct by Defendants and share the same legal theory as the Class. Accordingly, this minor factual difference will not defeat typicality. *See Stott,* 277 F.R.D. at 325; *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

8

the interests of absentees." *Lehocky*, 220 F.R.D. at 503; *Berger*, 257 F.3d at 482. Mr. Yoskowitz has done so.

Mr. Yoskowitz accurately testified, *inter alia*, that the Complaint alleges LPI owed him a fiduciary duty due to the Agency Agreement (Supp. App. 00149; Yoskowtiz Dep. at 33:1-17); that there were four causes of actions in the Complaint, and he was able to name three of them (Supp. App. 00151; *id*. at 105:8-25); that he understood a motion to dismiss and motion for class certification had been filed, and he reviewed the motion for class certification prior to filing (Supp. App. 00155-56; *id*. at 126:4 – 127:19); that he will attend mediation and trial if necessary (*id*. at 125:21 – 126:3); that he is being proposed as a Class and Subclass representative (Supp. App. 00153; *id*. at 122:3-12); that if the Complaint is successful, the Court will award reasonable attorneys' fees (Supp. App. 00150; *id*. at 41:14-18); and that he owes fiduciary duties to the absentee Class members including, but not limited to, "[putting] the interests of the class first" and "prosecut[ing] the case vigorously" (Supp. App. 00152; *id*. at 106:8-14).[9]

Defendants claim that because Mr. Yoskowitz was not a California resident at the time he purchased his life settlement, and thus has no standing to assert the UCL claims. Def. Opp. at 11-12. Tellingly, Defendants offer no controlling—or even persuasive—authority to support this legally defective argument. Mr. Yoskowitz is currently a California resident, and has lived in California for approximately five years. In *Norwest Mtg., Inc. v. Superior Court,* 72 Cal. Rptr. 2d 18, 23 (1999), the Court of appeal held that California residents had standing to assert UCL claims, regardless of where defendants' conduct occurred if it results in injury in California. *See also Ready Transport, Inc. v. AAR Manufacturing, Inc.,* 2006 WL 2131308 at *3 (E.D. Cal. July

---

[9] Next, Defendants claim Mr. Yoskowitz is atypical because "he does not contend that oncologist or medical doctors are unqualified to provide life expectancies." Def. Opp. at 12. Nowhere in Plaintiffs' Complaint do Plaintiffs allege that oncologists or medical doctors cannot be qualified to provide LEs. Therefore, this is irrelevant.

9

27, 2006).[10]

### iv. Frederick Vieira is Adequate and Typical

Defendants contend that Frederick Vieira is inadequate because he "lacks even the most basic knowledge about the facts, parties, and bases for the litigation," and because "he is more of spectator than an active participant." Def. Opp. at 15-16. Mr. Vieira repeatedly demonstrated his knowledge regarding the claims made in this matter. In fact, Mr. Vieira correctly named the Defendants in this matter (Supp. App. 00161; Vieira Dep. at 16:11-15); he knew who Dr. Cassidy is and the exact entity that he provides LEs to (Supp. App. 00162; *id.* at 19:13-19); he is aware that he does not have contractual relationship with LPHI or Peden (Supp. App. 00163; *id.* at 22:12-25); and he understand the Complaint's central theory on how the Class suffered harm, *i.e.*, by overpaying for life settlement investments (Supp. App. 00164; *id.* at 24:17-24).

Defendants' contention that Mr. Vieira is merely a "spectator" is insulting and absurd. Mr. Vieira gathered and provided all relevant documents in his possession to his counsel (Supp. App. 00170; *id.* at 73:20-23); he has spoken to counsel regarding this matter on numerous occasions (Supp. App. 00167-68, 00177; *id.* at 29:25 – 30:1-2; 174:20-24); he will attend mediation and trial (Supp. App. 00178; *id.* at 175:13-15); he attended his deposition in Dallas; he was aware of the motion to dismiss and motion for class certification that have been filed, and has reviewed the latter (Supp. App. 00178-79, 00181; *id.* at 175:16-18; 175:25 – 176:4; 181:15-17); and finally, he understand he has a duty to represent the absentee Class members "in the best way he possibly can." (Supp. App. 00176-77, 00180; *id.* at 173:20 – 174:2; 178:19-24). These examples reveal Mr. Vieira is taking an active role in and controlling the litigation and protecting the interests of absentees, and thus, he is an adequate Class representative. *See Berger*, 257 F.3d

---

[10] In the alternative, if the Court holds Mr. Yoskowitz cannot be a 17200 Subclass representative, he is still adequate and typical of the Class, and therefore should still be appointed a Class representative.

10

at 482.

Defendants also misleadingly assert that because Mr. Vieira relied "solely on a family member (and not the LPI documents)" when deciding to purchase his life settlements, he is atypical. Def. Opp. at 15. In truth, Mr. Vieira testified that the decision to invest in life settlements was his and that he based his decision "not only the conversations [with his family member but also] the literature that was provided." Supp. App. 00172; Vieira Dep. at 104:3-11; *see also* Supp. App. 00171; *id.* at 100:16-20. Therefore, for the UCL claim, Mr. Vieira is a proper 17200 Subclass representative, because he relied on the "literature" likely authorized by LPI, like all other Subclass members.[11] Additionally, as to the Class, reliance is not an element of breach of contract, breach of fiduciary duty, or aiding and abetting a breach of fiduciary duty, and thus, Defendants' argument is legally inapposite to these claims.

Defendants contort Mr. Vieira's testimony regarding his typicality of the Seller Subclass, and claim that his sales had nothing to do with the *Wall Street Journal* article. Def. Opp. at 14. Mr. Vieira testified to the best of his recollection that he read the *Wall Street Journal* article "approximately a year ago" when the article first "came out," which was on December 21, 2010. Supp. App. 00165-66; Vieira Dep. at 26:12 – 27:2. He did not, as Defendants claim, specifically testify that he read the article in February of 2011, one month after he sold his 7 of his 10 interests. *Id*. Mr. Vieira also sold his final three policies on March 10, 2012. *See* Def. Opp. at 14. Accordingly, Mr. Vieira is typical of the Class, the 17200 Subclass and the Seller Subclass.[12]

---

[11] Defendant R. Scott Peden testified that life settlement investments are provided to investors through LPI's network of licensees, and these licensees use literature regarding the life settlement investments authorized by LPI. *See* Supp. App. 00186; Peden Dep. at 104:8-20.

[12] Interim Co-lead counsel have been zealously and competently prosecuting this matter from this case's inception, and thus are adequate under Rule 23(a)(4). *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Defendants surprisingly attack the adequacy of Plaintiffs' highly-experienced counsel by pointing to several meritless arguments, including: Plaintiffs' counsel allegedly failed to provide how damages could be determined on a class-wide basis, and during depositions, Plaintiffs' counsel allegedly

11

### C. The Predominance Requirement Is Met
   i. Common Issues Predominate

There are no predominant individual issues regarding any of Plaintiffs' claims. *See* Motion at 16-21. Breach of contract claims involving uniform contracts like those at issue here are well-suited for class treatment. *See, e.g., Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ("[A]ctions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action."); *see also Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018, 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012). Defendants misunderstand the foundation of Plaintiffs' claims and the harmed suffered therefrom. Plaintiffs have always asserted that they "all purchased fractional interests in life insurance policies that utilized LEs provided by Cassidy and thus were **overcharged at the moment they purchased** those interests." Motion at 14 (emphasis added). Accordingly, Defendants' contention that if a particular LE was "accurate," (Def. Opp. at 19-20) then, LPI could not have breached their contractual or fiduciary duties or violated the UCL is simply misguided. Plaintiffs and the Class members were each harmed at the moment of purchase due to the inflated price of each life settlement. Any occurrences after the moment of purchase are irrelevant.

Plaintiffs' actuarial expert, P.J. Eric Stallard, a Member of the American Academy of Actuaries, a Fellow of the Conference of Consulting Actuaries, and an Associate of the Society of Actuaries, opines that a single formula with only three, readily ascertainable inputs can determine whether or not Dr. Cassidy systematically understated LEs on a Class-wide basis. *See*

---

asserted improper privilege claims and speaking objections. Def. Opp. at 18. In truth, Plaintiffs provided an explanation of how disgorgement or, alternatively, contractual damages would be determined on a Class-wide basis. *See* Motion at 21-24. Moreover, Plaintiffs' counsel's conduct at the depositions demonstrates the zeal and competence of Plaintiffs' counsel. If Defendants really had an issue with attorney conduct at a deposition, they would have filed a discovery motion; instead, they did nothing. Ironically, Defense counsel repeatedly made speaking objections at the deposition of Bruce Blacker about which they complain here. *See, e.g.*, Supp. App. 00189-90; Blacker Dep. at 28:16-22; 80:16-18.

Supp. App. 0042. Stallard confirmed Plaintiffs' position that "the accuracy of Cassidy's life expectancy estimates is best determined by looking at the pool of LEs consisting of the entire group of insureds covered by the Class Action," that an individualized analysis of the medical records on a policy-by-policy basis is not required, and that given the large size of the pool of insureds at issue in this case, the outcome of the calculation will be "highly accurate" and assigned "full credibility" in generally accepted actuarial practice. Supp. App. 0041-42, 0045.

### ii. All Class and Subclass Members Are Similarly Harmed

Plaintiffs' primary remedy in this matter is disgorgement of fees and/or profits realized by Defendants as a result of breaches of fiduciary duty and violations of the UCL. *See* Motion at 21. Although Defendants argue that calculating the amount of disgorgement will require a highly individualized analysis, what Defendants fail to point out is that determining the amount of disgorgement is virtually a mechanical task, easily capable of mathematical or formula calculation. *See State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 326 (5th Cir. 1978) ("Thus in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability."). Defendants admitted that determining profit and/or fees for "each individual transaction" would be a simplistic process because LPI maintains "worksheet for each transaction" containing such information. Supp. App. 00195; Carr Dep. at 44:19-25.[13] Additionally, Plaintiffs' expert David Fuller confirmed, "I have determined that the fee paid to LPI on a policy by policy basis is an easily identifiable amount and could be determined through the application of a uniform formula to each policy." Supp. App. 009; Fuller Decl. at ¶13. Thus,

---

[13] Q. Looking at each individual transaction, would there be a way to determine the specific profit per each transaction to LPI? A. Net of fees? Q. Yes. A. Yes, there would be a worksheet for each transaction.

13

determining the amount of disgorgement is virtually a mechanical task, easily capable of mathematical or formula calculation. *See Bell Atl. Corp.*, 339 F.3d at 307.

In the alternative, Defendants' breaches of their contractual obligations entitle Plaintiffs and Class members to damages equal to the amount overpaid for life settlements that utilized LEs provided by Cassidy. *See* Motion at 22. Plaintiffs' expert has definitively stated that "damages for each class member can be determined by applying a uniform formula to the transaction details of each life settlement transaction." Supp. App. 0012; Fuller Decl. at ¶25. "The formula used to calculate damages under this scenario is based on the concept of internal rate of return ("IRR"), a commonly-used and widely-accepted financial concept." Supp. App. 0012; Fuller Decl. at ¶27.

Moreover, Defendants submit the Expert Report of Bruce L. Blacker, which wrongly claims there can be no Class-wide formula for determining harm to the Class. Blacker's own report concedes it is based on a small sample of policies from which no statistically significant conclusions may be drawn. *See* Blacker Report at ¶8; *see also Coleman v. Exxon Chem. Corp.*, 162 F. Supp. 2d 593, 618 (S.D. Tex. 2001) ("The Fifth Circuit has cautioned against the use of statistics involving small sample sizes."). Defendants' expert also confirms Plaintiffs' allegation that one can reasonably extend conclusions from a small sample of policies to the rest of the pool, *i.e.*, the rest of the Class. *See* Supp. App. 00191-92; Blacker Dep. at 82:20 – 83:11.  And even if Blacker's conclusion derived from a small sample size somehow carried any weight, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010).

### iii. A Class Action Is Superior to Individual Actions

Defendants argue that because Plaintiffs have invested amounts that are not "minimal," and because some Plaintiffs testified they would pursue their claims individually if a class was not certified, superiority has not been established. This is nonsense. "The focus of the superiority requirement is on the efficiency to be gained by proceeding on a class basis and the potential problems of managing the class once it is certified." *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 160 (S.D. Tex. 2003) (citation omitted).

Here, Plaintiffs and Class members all maintained the same agency and contractual relationship with LPI and were all subject to the same alleged course of conduct by Defendants. *See* Motion at 16-24. Thus, Plaintiffs have demonstrated that individual issues do not predominate regarding any of their causes of action. *See id.*; *see also In re Enron Corp. Securities*, No. MDL 1446, 2006 WL 1662596 at *17 (S.D. Tex. June 7, 2006).[14]

Finally, Plaintiffs' stated willingness to continue their cases against Defendants if a class is not certified demonstrates that they are ideal, vigorous Class representatives, and it does not diminish the fact that a class action is vastly superior to hundreds or thousands of individual suits. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010).[15]

### III. Conclusion

For the reasons set forth herein, Plaintiffs' motion should be granted.

---

[14] The 17200 Subclass was also subjected to the same alleged course of conduct by Defendants, and thus, common questions predominate and a class action is appropriate. *See., e.g., Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011). Further, as "[o]nly the named plaintiff in an UCL class action case need show injury and causation," the other 17200 Subclass members are not required to prove reliance and damage, and thus, individual issues do not predominate on these grounds. *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 543 (N.D. Cal. 2010).

[15] Plaintiffs also submit herewith their Proposed Trial Plan for the litigation. *See* Supp. App. 00196-.

| | |
|---|---|
| Dated: June 22, 2012 | Respectfully submitted, |
| | /s/ Kim E. Miller |
| Lewis S. Kahn | Kim E. Miller |
| Louisiana Bar No. 23805 (Admitted PHV) | California Bar No. 178370 (Admitted PHV) |
| Craig J. Geraci, Jr. | **KAHN SWICK & FOTI, LLC** |
| Alabama Bar No. 3847-C62G (Admitted PHV) | 500 5th Avenue, Suite 1810 |
| **KAHN SWICK & FOTI, LLC** | New York, NY 10110 |
| 206 Covington Street | Tel: (212) 696-3730 |
| Madisonville, LA 70447 | Fax: (504) 455-1498 |
| Tel: (504) 455-1400 | Email: Kim.Miller@ksfcounsel.com |
| Fax: (504) 455-1498 | |
| Email: Lewis.Kahn@ksfcounsel.com | |
|         Craig.Geraci@ksfcounsel.com | |
| | |
| Terrell W. Oxford | Steven G. Sklaver |
| Texas State Bar No. 15390500 | California Bar No. 237612 (Admitted PHV) |
| Jonathan Bridges | Amy T. Brantly |
| Texas State Bar No. 24028835 | California Bar No. 210893 (Admitted PHV) |
| **SUSMAN GODFREY L.L.P.** | **SUSMAN GODFREY L.L.P.** |
| 901 Main Street, Suite 5100 | 1901 Avenue of the Stars, Suite 950 |
| Dallas, Texas 75202 | Los Angeles, CA 90067-6029 |
| Telephone: 214-754-1900 | Telephone: (310) 789-3100 |
| Facsimile: 214-754-1933 | Facsimile: (310) 789-3150 |
| Email: toxford@susmangodfrey.com | Email: ssklaver@susmangodfrey.com |
|         jbridges@susmangodfrey.com |         abrantly@susmangodfrey.com |
| | |
| | **INTERIM CO-LEAD CLASS COUNSEL** |
| | |
| Bruce K. Packard | Stuart H. McCluer |
| State Bar No. 15402300 | Mississippi Bar No. 101366 (Admitted PHV) |
| W. Craig Stokley | MCCULLEY MCCLUER PLLC |
| State Bar No. 24051392 | 1223 Jackson Avenue East, Suite 200 |
| RINEY PALTER, PLLC | P.O. Box 2294 |
| 5949 Sherry Lane, Suite 1616 | Oxford, Mississippi 38655 |
| Dallas, Texas 75225-8009 | (662) 236-1401 |
| Telephone: 214-461-1200 | Email: smccluer@mcculleymccluer.com |
| Facsimile: 214-461-1210 | |
| Email: bpackard@rineypalter.com | **COUNSEL FOR PLAINTIFF SEAN** |
|         cstokley@rineypalter.com | **TURNBOW** |
| | |
| **ADDITIONAL COUNSEL FOR PLAINTIFFS** | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 22, 2012, I electronically filed the foregoing document via the CM/ECF electronic filing system and served all counsel of record pursuant to Local Rule 5.1(d) and FED. R. CIV. P. 5(b)(2)(E).

                                                          /s/ Kim E. Miller
                                                          Kim E. Miller