**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SEAN TURNBOW, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1030-M |
| | § | |
| LIFE PARTNERS INC., and LIFE | § | |
| PARTNERS HOLDINGS, INC., | § | |
| | § | |
| *Defendants.* | § | |

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE REVISED OPPOSITION BRIEF**

## TABLE OF CONTENTS

I.      Introduction ................................................................................................ 1

II.     The Law Permits Reply Briefs That, As Here, Contain Rebuttal Argument and
        Evidence. ................................................................................................... 2

        A.      Plaintiffs' expert affidavits rebut Defendants' expert report. ................... 4

        B.      Plaintiffs' Trial Plan similarly rebuts the Defendants' contentions. ......... 9

        C.      Plaintiffs' class definition has always  included only "life settlements" and
                not viaticals. ................................................................................. 11

III.    The Reply Brief, Even Assuming Arguendo It Contains Non-Rebuttal Materials,
        Meets the Standards for Acceptance. ............................................................. 17

IV.     Conclusion ................................................................................................ 18

CERTIFICATE OF SERVICE ................................................................................ 20

## TABLE OF AUTHORITIES

### CASES

*Bone Care International, LLC v. Pentech Pharmaceuticals, Inc.*,
    2010 WL 3894444 (N.D. Ill. Sept. 30, 2010), ................................................................ 3, 4

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004) ........................................................................ 2, 4

*Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*,
    2008 U.S. Dist. LEXIS 114397, at *2 (N.D. Tex. July 23, 2008) .................................... 18

*Gump v. Trinity Christian Academy*,
    2005 U.S. Dist. LEXIS 15201 at *1 n. 1 (N.D. Tex. 2005) ............................................. 18

*In re Florida Cement and Concrete Antitrust Litigation*,
    278 F.R.D. 674 (S.D. Fla. Jan. 3, 2012) ................................................................... 3

*Kirola v. City and County of San Francisco*,
    2010 U.S. Dist. LEXIS 7355 at *2 ........................................................................... 2

*Murray v. TXU Corporation*,
    2005 U.S. Dist. LEXIS (N.D. Tex. May 27, 2005) ........................................................ 2

*Pennsylvania General Industries Co. v. Story*,
    U.S. Dist. LEXIS 9923 at *1 (N.D. Tex. 2003) ........................................................... 18

*Roussell v. Brinker International, Inc.*,
    441 Fed. Appx. 222 (5th Cir. 2011) ........................................................................ 9

*Schimek v. MCI, Inc.*,
    2006 U.S. Dist. LEXIS 54747 at *2 n. 5 (N.D. Tex. 2006) ............................................. 18

*Simmons v. T-Mobile USA, Inc.*,
    2006 U.S. Dist. LEXIS 89374 at *1 - 2 ..................................................................... 3

*Spring Industries, Inc. v. American Motorists Insurance Co.*,
    137 F.R.D. 238 (N.D. Tex. 1991) ............................................................................ 17

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 (5th Cir. 2004) ................................................................................ 17

### RULES

Advisory Committee Notes,
    1983 Amendment to Fed. R. Civ. P. 16, subdivision (c) ................................................ 4

**TREATISES**

3 A. Conte & H. Newberg, <u>Newberg on Class Actions</u> § 7:26 (2002)........................................... 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SEAN TURNBOW, et al.,                    §
                                          §
        Plaintiffs,                       §
                                          §
v.                                        §        CIVIL ACTION NO. 3:11-CV-1030-M
                                          §
LIFE PARTNERS INC., and LIFE              §
PARTNERS HOLDINGS, INC.,                  §
                                          §
        Defendants.                       §


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION FOR LEAVE TO FILE REVISED OPPOSITION BRIEF**

**I.      Introduction**

        Defendants have filed a motion to strike "or in the Alternative, Motion for Leave to File

Revised Opposition Brief" (the "Motion").   Even though the evidence submitted in support of

the reply brief is proper rebuttal evidence, Plaintiffs have told the Defendants that Plaintiffs do

not oppose the alternative relief requested, namely, that Defendants be permitted to file a revised

class opposition brief.[1]  Defendants, however, rejected that suggestion and insist on pursuing a

motion to strike.

        Although the Motion lists three ostensible grounds in support of the motion, none is

valid.   Contrary to Defendants arguments, (1) Plaintiffs' expert affidavits rebut defendants'

expert report; (2) Plaintiffs' trial plan likewise consists solely of rebuttal information and makes

no new arguments; and (3) Plaintiffs have maintained the same class definition, which only uses

---

[1] Defendants' counsel, when they called Plaintiffs' counsel to confer on the Motion, said that they would be filing a
motion to strike.  They also mention they would seek "alternative relief," but declined to say what that alternative
relief might be.  Plaintiffs' counsel replied that we would oppose the motion.

the term "life settlements"; Defendants' attempt to argue that a "viatical" – a term not used in the class definition – is the same thing as a "life settlement" contradicts their own witnesses' testimony and filings with the Securities and Exchange Commission.

Plaintiffs respectfully submit that the Motion should be denied.

## II.   The Law Permits Reply Briefs That, As Here, Contain Rebuttal Argument and Evidence.

A reply brief that presents rebuttal argument and evidence is entirely appropriate. For example, in *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004), the Court noted that "[t]he admissibility of evidence in rebuttal is committed to the discretion of the trial judge."[2] The Court then held, "Rebuttal evidence is properly admissible when it will 'explain, repel, counteract, or disprove the evidence of the adverse party.'" The Court largely permitted the expert rebuttal reports, even some portions that could have been included in the original report. The Court reasoned that automatically excluding from evidence anything an expert could have put in the original report "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report …."[3]

The Court in *Murray v. TXU Corporation*, 2005 U.S. Dist. LEXIS 10298 (N.D. Tex. May 27, 2005), came to a similar conclusion. The defendant moved for partial summary judgment. The plaintiff opposed the motion, and the defendant filed a reply brief. The plaintiff moved to strike the reply. In considering the motion to strike, the Court first noted that the very "purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard,

---

[2] The Motion begins with cases in which the moving party, unlike Plaintiffs here, used the reply brief to submit entirely new, non-rebuttal evidence. Even in such a circumstance, the Court can admit and consider the reply. *See* pp. 16-18 *infra*.
[3] *See also Kirola v. City and County of San Francisco*, 2010 U.S. Dist. LEXIS 7355 at *2 (N.D. Cal. Jan. 29, 2010) ("Rebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure.").

and 'to *rebut* the nonmovants' response ....'"[4]  The Court then denied the motion, finding that

the reply had raised no new arguments and the evidence – deposition excerpts – submitted with

the reply were appropriate.[5]

Likewise, the Court in *Bone Care International, LLC v. Pentech Pharmaceuticals, Inc.*,

U.S. Dist. LEXIS 104549 at *12 (N.D. Ill. Sept. 30, 2010), explained, "Experts' rebuttal reports

... are by nature responsive, and necessitate 'a showing of facts supporting the opposite

conclusion' of those at which the opposing party's experts arrived in their responsive reports.'"[6]

The Court also found that the moving party had suffered no prejudice in that the rebuttal reports

were not submitted "at the eleventh hour."[7]  Accordingly, the Court denied the motion in limine

to exclude the rebuttal reports.[8]

Even more on point is this year's decision in *In re Florida Cement and Concrete*

*Antitrust Litigation*, 278 F.R.D. 674 (S.D. Fla. 2012).  There, the Court faced a situation where,

as here, the plaintiffs submitted expert rebuttal evidence in support of their motion for class

certification.  The Court, while excluding new analyses that "clearly 'exceed[ed] what can

reasonably be called rebuttal evidence," permitted and considered the portions of the evidence

that were accurately described as rebuttal.[9]

---

[4] *Id.* at p. 4 (emphasis in original).
[5] *Id.* The Court also denied plaintiffs' alternative request to file a sur-reply brief. *Id.* and n.7 ("A sur-reply is appropriate ... only when the movant raises new legal theories or attempts to present new evidence at the reply stage.")
[6] 2010 WL 3894444 at *17.
[7] *Id.* at *18.
[8] *See also Simmons v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 89374 at *1 - 2 (S.D. Tex. Nov. 22, 2006) ("Because full and complete briefing is useful to the adjudication of this case, the Court will consider the Reply and its attached affidavits. Defendant's alternative and unopposed request for leave to file a surreply will allow it to address what it characterizes as Simmons's new evidence.")
[9] *In re Florida Cement and Concrete Antitrust Litig.* 278 F.R.D. at 683 & n.6.

Class actions such as the instant one are typically classified as one type of complex litigation,[10] and flexibility constitutes one of the "keys to efficient management of complex cases."[11] In that context, the submission of affidavits and counter-affidavits in class certification proceedings can be a common occurrence:

> Where [] the party opposing the class submits factual affidavits which dispute the class facts alleged in pleadings of the class representative, *the burden may be shifted back to the class representative to file counter-affidavits*, if appropriate, in order to overcome the general rule that facts in an undisputed affidavit must be taken as true, unless rebutted, ....

3 A. Conte & H. Newberg, Newberg on Class Actions § 7:26 (2002) (emphasis added).

Accordingly, the Reply Brief and attachments should be accepted and considered here. Plaintiffs' expert affidavits are truly rebuttal in nature. They "explain, repel, counteract, or disprove the evidence of the adverse party."[12] Plaintiffs' expert rebuttal affidavits also contain "a showing of facts supporting the opposite conclusion" of the opinion of Defendants' expert.[13]

## A. **Plaintiffs' expert affidavits rebut Defendants' expert report.**

The Fuller and Stallard affidavits submitted with the reply brief are entirely proper. As an initial proposition, Plaintiffs' motion for class certification described the same methodologies at length:

> With respect to disgorgement, Plaintiffs' and Class members' claims against Defendants for breaches of fiduciary duty all warrant the same equitable remedy: *disgorgement of fees and/or profits realized by Defendants* ....
>
> Alternatively, with respect to damages, Defendants' breaches of their contractual obligations entitle Plaintiffs and Class members to damages commensurate with the amount overpaid for interests in life settlements that utilized [life expectancies ("LEs")] provided by Cassidy.... Experts will opine

---

[10] See generally Manual for Complex Litigation, Fourth § 21 (2004).

[11] Advisory Committee Notes, 1983 Amendment to Fed. R. Civ. P. 16, subdivision (c).

[12] See Crowley, 322 F. Supp. at 551.

[13] Bone Care Int'l, LLC, 2010 U.S. Dist. LEXIS 10459 at *12.

regarding the true market value of Plaintiffs' fractional interests at the time of purchase, and the methodology applied to all Class and Subclass members to calculate disgorgement and damages will not change....

The claims of the class are rooted in the fact that Cassidy's method for determining LEs systematically underestimated the [LEs]. *The size of this understatement is best determined by looking at a pool of LEs.... Once the magnitude of the systematic understatement is determined, it can be 'reversed out' to develop 'true' LEs .... Plaintiffs' damages expert will then derive a discount rate* that is observable in the market for life settlements by calculating the internal rate of return associated with the policy's cash flows given the LE. *This observed discount rate can then be used to determine the true value of the life settlement interests* purchased by class members at the time of purchase. Damages will then be the difference between these values and the amounts paid for Class members' life settlement interests."[14]

Plaintiffs have not changed theories. To the contrary, the Fuller and Stallard affidavits utilize the same methodologies described in the motion for class certification. Not until Defendants' expert, Mr. Blacker, took the position that no such methodology could be developed did the Plaintiffs ask Mr. Fuller and Mr. Stallard to detail the methodologies.

Moreover, the affidavits of Mr. Fuller and Mr. Stallard directly rebut the points in the report of Defendants' expert, Mr. Blacker. The Fuller Affidavit, for its part, exclusively addresses many of the opinions in Mr. Blacker's report.[15] The following chart shows the opinion in the Fuller Affidavit and which part of the Blacker report it rebuts.

| BLACKER REPORT | FULLER AFFIDAVIT |
|---|---|
| ¶ 5(b): "[A]ny class-wide formula cannot determine the disgorgement of LPI's fees that may be awarded to individual purchasers of the purported Class." | ¶ 13:[16] "... I have determined that the fee paid to LPI on a policy by policy basis is an easily identifiable amount and could be determined through the application of a uniform formula to each policy." |

---

[14] Plaintiffs' Motion for Class Certification and Memorandum in Support at pp. 21-23. (Emphasis added)
[15] The Motion at footnote 17 seems to complain about Plaintiffs' production of Mr. Fuller's documents. At the time Defendants requested those documents, May 23, 2012, Mr. Fuller had not made a report, and so there was nothing to produce. Plaintiffs produced the documents to Defendants on July 5, 2012. *See* APP_8 in the accompanying appendix of evidence in support of this motion (cover email to defense counsel).
[16] Mr. Fuller's opinions begin at ¶ 13 of his affidavit.

| | |
|---|---|
| ¶ 39: "As my analysis shows, there is a wide disparity in LPI's fees as a percentage of acquisition cost." | ¶ 16:[17] "This calculation determines LPI's fee in each life settlement transaction by taking the acquisition price and subtracting other fees and costs related to that transaction.   While the amount of the inputs to the formula and LPI's resulting fee would vary from transaction to transaction, the overall calculation of formula would remain the same." |
| p. 18 (title to section D): p. 18 (title to section D):   "Any   Class-Wide   Formula   Cannot Estimate the Disgorgement of LPI's Fees for Individual Purchasers of the Purported Class"[18] | ¶ 17: "The ability to calculate LPI's fee using a standard formula is evidenced in Appendix A and B of [Mr. Blacker's] report."[19] |
| ¶ 4: "Without   a   single   formula,   the computation of damages would be a highly individualized task." | ¶ 23:[20] "Based on Mr. Carr's testimony[21] along with data presented in Mr. Blacker's report it appears as though it is possible LPI has already calculated their fee from each transaction." |
| ¶ 4: "... I have concluded that a class-wide formula cannot be utilized to reasonably estimate the actual damages allegedly suffered by individual purchasers in the purported Class." | ¶ 25:[22] "[I]t is my opinion that damages for each class member can be determined by applying a uniform formula to the transaction details of each life settlement transaction."[23] |
| ¶ 39: "If it is determined that some or all of the fees paid to LPI should be disgorged, any class-wide formula would inevitably lead to overcompensation of some purchasers and undercompensation for other purchasers." | ¶ 39:[24] "Mr. Blacker's statement is proven wrong by the illustration in Schedule A.1 where the actual formula determines the exact LPI fee and therefore damages for two separate class members without any overestimation or underestimation." |

---

[17] ¶ ¶14-15 state some of the facts upon which Mr. Fuller bases his opinions

[18] This title is virtually identical to the language quoted above from Mr. Blacker's ¶ 5(b).

[19] ¶¶ 18-20 show how, based on examples in Mr. Blacker's appendices, the formula would work.

[20] ¶ 21 states that, to the extent class members purchased fractional interests in policies, the fee disgorgement would be pro rated accordingly.

[21] ¶ 22 sets forth the relevant part of Carr's testimony:

> Q. Looking at each individual transaction, would there be a way to determine the specific profit per each transaction to LPI?
> …
> A. Yes, there would be a worksheet for each transaction.

[22] ¶ 24 simply states Mr. Fuller's understanding that Plaintiffs are also seeking damages for breach of contract.

[23] ¶ 26 explains Mr. Fuller's statement of what he means by "correct life expectancy." ¶¶ 27-28 list the formula he would use and the inputs for that formula. ¶¶ 29-36 gives two examples of the application of the formula.

[24] ¶¶ 37-38 set forth the part of Mr. Blacker's report that Mr. Fuller then rebuts.

| | |
|---|---|
| ¶ 37: "I conclude that, based on the diverse characteristics of the life settlement and viatical[25] policies …, any class-wide formula for estimating damages would lead to overcompensation of certain purchasers and undercompensation for other purchasers." | ¶ 43:[26] "With respect to the unique characteristics mentioned by Mr. Blacker, this aspect does not inhibit the ability to use a formula …. This is because the correct formula [for contract damages] uses the appropriate characteristics of each policy as an input and therefore the uniqueness is accounted for in the formula …." |
| ¶ 38(b): "[T]here are variations in the amounts paid to the sellers as well as the fees paid to various participants…. [A]s such, a class-wide formula does not account for the possible changes that would occur in those components when life expectancy is changed." | ¶ 44: "Mr. Blacker incorrectly concludes that a class-wide formula … cannot be used because there is a variation in the amounts paid to sellers as well as fees paid to various participants. This notion is incorrect because damages are … based on the amount the class member paid to purchase an interest …, regardless of the amount that was paid to the seller of the policy or any other participant." |
| ¶ 39(c): "Purchasers of the life settlement or viatical policies have individual investment preferences. A class-wide formula does not account for how purchasers would assess a different combination of life expectancy and corresponding acquisition cost offer." | ¶ 45: "Mr. Blacker also incorrectly concludes that a class-wide formula to determine the extent class members overpaid cannot be used because investors have individual preferences…. However, the differences in investor preferences are captured by the components of the formula being used such as the price paid, the face value of the policy, and the life expectancy." |
| ¶ 39(d): "If, as alleged by the Plaintiffs, the policies facilitated by LPI should systematically have had higher life expectancies, the competitive process would have led to different outcomes for different policies." | ¶ 46: "Mr. Blacker also concludes that a class-wide formula to determine the extent class members overpaid cannot be used because LPI competes with other prospective buyers in the market place…. The flaw behind this reasoning [is that] the formula … is applicable regardless if there is competition in the life settlement marketplace."[27] |

---

[25] Mr. Blacker incorrectly assumed that the Class included viatical policies. *See* section C *infra*.

[26] ¶¶ 40-42 describe the part of Mr. Blacker's report that Mr. Fuller will rebut. ¶ 43 acknowledges that Mr. Blacker did not have Plaintiffs' actual formula.

[27] The remaining in paragraphs in Mr. Fuller's affidavit, ¶¶ 47-50, simply restate Mr. Fuller's general conclusions and bases for them, as well as his independence from the Plaintiffs and Defendants.

The Stallard Affidavit, for its part, rebuts a different portion of the Blacker report and also rebuts the arguments that Defendants build entirely on that portion of the Blacker report.[28] Put another way, Stallard rebuts several of Blacker's opinions and several assertions Defendants make for which they have no evidentiary support, unless from Mr. Blacker's report. The following chart shows each opinion in the Stallard Affidavit and what each opinion rebuts.

| BLACKER or DEFS. OPPOSITION | STALLARD AFFIDAVIT |
|---|---|
| Blacker ¶ 38(a): "The policies acquired by individual purchasers in the Class are unique. The alleged underestimation of life expectancy, if it exists, would be unique to individual policies and would require an individualized assessment." | p. 5: "A single formula with only three readily ascertainable inputs can determine whether or not Dr. Cassidy systematically understated [life expectancies]." |
| Defs' Opp. p. 2: "It is self-evident that if certain of the LEs were not underestimated and the insured died at or before the LE provided by Dr. Cassidy, such purchasers cannot establish either liability or damages. [S]uch purchasers [should be excluded from the Class]." | p. 4:[29] "The defendants failed to recognize the need to maintain the integrity of the entire pool of insureds in making the determination of the accuracy of Dr. Cassidy's [LE] estimates when … they wrote [the statement in the left-hand column]. That statement is incorrect and it is certainly not 'self-evident.' … Only [by wrongly excluding insureds who died early from the pool] would it be trivially obvious (that is, 'self-evident') that Dr. Cassidy's LE estimates were all less than the survival times for each of the retained insured." |

---

[28] In footnote 13 of the Motion, Defendants falsely assert, with no factual basis, that Plaintiffs violated the Protective Order. To the contrary, Plaintiffs' counsel sent Mr. Stallard only documents that Defendants had placed on PACER for the entire public to view, including the partially-redacted Blacker report and exhibits thereto. *See* Sklaver Declaration at APP_6 – 7.
[29] Mr. Stallard's opinions begin on page 3. The parts preceding the language quoted above simply define "life expectancy" and identify key concepts, such as, "[L]ife expectancy is an average value: it quantifies the *average survival time* of the relevant set of individuals, *considered as a group*." (Emphasis in original)

| | |
|---|---|
| Defs' Opp. p. 2: "In reality, because the 'claims of the Class are rooted in the fact that Cassidy's method for determining life expectancy estimates (LEs) systematically underestimated the amount of time that would pass before Class members would receive a return on their investment,' each and every LE performed by Dr. Cassidy must be individually analyzed to, first, determine if such life expectancies were, in fact underestimated, and second, if so, by what amount." | p. 5: "As noted above, the accuracy of Dr. Cassidy's [LE] estimates is best determined by looking at the pool of LEs consisting of the entire group of insureds covered by the Class Action.<br><br>"The procedures for individualized analyses proposed by the defendants would carry the idea of separation to the ultimate extreme, with each individual insured forming his/her own subgroup with precisely one member....<br><br>"This would have maximum adverse impact on the ability of the statistical tests to make the correct separate determinations ...." |
| Defs' Opp. p. 20: "Determining whether Dr. Cassidy's LE for a particular policy was 'accurate' or 'reasonable' is a highly individualized determination, and one that requires expert analysis of medical records of each insured for more than 2300 policies." | p. 5: "[Defendants' suggested] methodology has no basis in the professional literature and is not commonly accepted." |
| Defs' Opp. p. 20: "[E]xperts will have to consider the insured's personal medical records that were made available to Dr. Cassidy at the time he prepared the LE, as well as individualized evidence concerning the medical treatments and prognostications available for each insured's particular maladies at that time." | p. 5: "Under [my] formula, there is no need for a review of each insured's medical records. The only required inputs are (1) the LEs that Dr. Cassidy provided, (2) the mortality tables that he used (or an equivalent), and (3) the known survival times of each insured, each of which is information that is readily available." |
| Defs' Opp. p. 20: "In short, the determination of the 'accuracy' or 'reasonableness of each LE provided by Dr. Cassidy ... will unquestionably degenerate into thousands of mini-trials ...." | pp. 6-8 [The remainder of Mr. Stallard's Affidavit consists of a description of the classwide formula and how it would operate to "compute the corrected or 'true' life expectancy ... for each individual insured covered by the Class Action."] |

## B. Plaintiffs' Trial Plan similarly rebuts the Defendants' contentions.

Even though a trial plan is not required for class certification,[30] on the very first page of

their opposition to class certification, the Defendants criticized plaintiffs for not having proposed

---

[30] See *Roussell v. Brinker International, Inc.*, 441 Fed. Appx. 222 (5th Cir. 2011) (rejecting contention that failure of court to adopt any specific trial plan proposed by the parties was error).

a trial plan.[31]   The Defendants also argued that the absence of a trial plan cuts against the adequacy of counsel.[32]   To rebut those statements, Plaintiffs attached a Trial Plan to their reply brief.

Plaintiffs' Trial Plan consists of six substantive paragraphs.   Each directly rebuts a contention made in Defendants' opposition to class certification and repeats verbatim statements Plaintiffs made elsewhere in the class briefing.

- The first paragraph begins with a statement that a trial plan is not necessary at this stage of the litigation, but goes on to say that a trial plan can rebut – "address" – "Defendants' concern that individual inquiries will be needed to determine damage amounts."[33]

- The second paragraph, after the first sentence, is taken verbatim from the class certification motion or reply brief.[34]   These sentences rebut Defendants' contention that a classwide formula is unavailable for disgorgement.

- The third paragraph rebuts the Defendants' similar contention with respect to damages and comes verbatim from the class certification motion.[35]

- The fourth paragraph rebuts the Defendants' similar contention about demonstrating the systematic understatement of Dr. Cassidy's LEs.   The sentences track verbatim statements Plaintiffs made in the class certification motion or their reply brief.[36]

- The fifth paragraph of the trial plan continues to address Defendants' contention about classwide damages and comes verbatim from the class certification motion.[37]

- The sixth paragraph finishes addressing Defendant's contention about class wide damages and comes verbatim from the reply brief and the original class certification motion.[38]

---

[31] Defendants' Opposition to Plaintiffs' Motion for Class Certification at p. 1.

[32] *Id.* at p. 6.

[33] Plaintiffs' Proposed Trial Plan at p. 2 (quoting *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 556 (5th Cir. 2011).

[34] *See* Plaintiffs' Motion for Class Certification at pp. 21-22; Plaintiffs' Reply in Further Support of Motion for Class Certification at pp. 1-2.

[35] *See* Plaintiffs' Motion for Class Certification at p. 22.

[36] *See id.* at pp. 22-23; Plaintiffs' Reply in Further Support of Motion for Class Certification at pp. 12-13.

[37] *See* Plaintiffs' Motion for Class Certification at p. 23.

[38] *See* Plaintiffs' Reply in Further Support of Motion for Class Certification at p. 14; Plaintiffs' Motion for Class Certification at pp. 23.

Given that Plaintiffs' Trial Plan consists entirely of statements made elsewhere in Plaintiffs' briefing, the reply brief can stand alone without the Trial Plan. Plaintiffs nevertheless thought it helpful to pull together these various statements in one place.

That the Trial Plan consists solely of statements Plaintiffs made elsewhere also negates Defendants' argument that the Trial Plan is some kind of effort to evade page limitations. The trial plan contains no new arguments.[39]

### C. Plaintiffs' class definition has always included only "life settlements" and not viaticals.

Finally, Defendants are mistaken that Plaintiffs seek to change the definition of the class. Any confusion the Defendants claim to have concerning the class definition is entirely their own doing.

Plaintiffs have never included viaticals in the class definition; the class definition identifies only one product -- "life settlement." The testimony in this case establishes uniformly and unequivocally that viaticals are not life settlements and, therefore, are not included as a result of the use of the term "life settlements" in the class definition. Because viaticals have never been included in the class definition, Defendants cannot claim harm from Plaintiffs' reply argument stating that viaticals are excluded.

First, the reply brief does not alter or purport to alter the language of the class definition presented in the opening motion. The lone change in wording took place in the opening motion – not the reply that Defendants seek to strike here. Further, that non-substantive change merely deleted surplusage – "at any time" – that appeared in the definition pleaded in the Consolidated Class Action Complaint. This edit does not change the meaning of the class definition in any way: "all persons in the United States who purchased or otherwise acquired fractional interests in

---

[39] If the Trial Plan were to count against page limitations, then Blackers' unsworn 20-page report would put the Defendants way over their own page limit.

life settlements, from or through LPI or LPHI, for which Cassidy provided life expectancy assessments." Motion at 8.

Second, when Defendants' counsel raised this issue at the deposition of named plaintiff Sean Turnbow, he testified that, as a class representative, he was representing purchasers of life settlements, not purchasers of viaticals:

> Q.     [by Ms. Yingling] Mr. Turnbow, who are you representing in this case?
>
> A.     Myself and the class of people that bought these life settlements from LPI.
>
> Q.     Are you representing people that bought viatical settlements?
>
> A.     Not that I know of. [40]

Counsel did not follow up on this line of questioning with Mr. Turnbow and did not ask any of the other plaintiffs about the issue.  In contrast to the many insignificant things for which Defendants' class opposition attempted to fault the named plaintiffs, conspicuously absent was any suggestion that Mr. Turnbow did not know the class he represented.  And for good reason: Mr Turnbow got it right – he represents life settlement purchasers and not viatical purchasers.

Third, Mr. Turnbow's deposition was not the first time that Defendants' counsel knew Plaintiffs' position on this issue. At the parties' initial Rule 26(f) conference, on November 16, 2011, Defendants' counsel mentioned the distinction between viaticals and life settlements. Plaintiffs' counsel responded that Plaintiffs did not intend the class definition to include viaticals, that Plaintiffs' counsel believed that none of the named Plaintiffs had purchased viaticals, and that Plaintiffs would like to take a prompt Rule 30(b)(6) deposition for, among other purposes, obtaining confirmation about the usage of these two distinct terms in defendants' records. [41]

---

[40] Turnbow dep. at 144:3-9, APP_10..

[41] *See* Declaration of Jonathan Bridges ¶ 3, APP_1.  Plaintiffs do not know why Defendants nonetheless noted in their section of the Rule 26(f) Report that they contend that the class includes viaticals. Plaintiffs did not agree then and do not agree now with this contention. *See id.* at ¶ 4, APP_1 - 2.

Fourth, at that Rule 30(b)(6) deposition on December 13, 2011, Plaintiffs sought and obtained confirmation that life settlements and viaticals were two independent and separate Life Partners products. Following a question, Defendants' counsel interrupted the answer of LPI's first witness to ask him, "<u>Are you including viaticals in your definition of life settlements</u>, or how are you defining life settlements?" Peden at 33:20-22, APP_13 (emphasis added). In the immediately following testimony, Plaintiffs sought clarification on precisely that distinction:

Q.    [by Mr. Bridges] [I]t would help me ask my question if you could kind of divide up the business of Life Partners for me. Are there two segments, viaticals versus life settlements? [Ensuing objections and discussion omitted.] Mr. Peden, can you tell me now what the – the difference is between viatical and life settlement contracts at LPI? Do you know?

A.    The distinction generally – and there are more specific ones, but generally speaking, a viatical deals with a person who has an abbreviated life expectancy due to a terminal illness, some kind of medical condition. And a life settlement is typically a person who is of an advanced age. That's why their life expectancy is shorter than – well, is – is abbreviated.

Q.    Is it accurate to describe Life Partners – LPI's business into those two segments and say that there's not a third?

A.    The distinction that you made earlier had to do with who's buying the policies, the retail versus institutional, and I suppose you could make that distinction as well.

Q     I'm – I'm sorry, I didn't understand. Were you agreeing with me, yes, that there are those two categories and not a third category?

A.    As far as different kinds of policies that we look at, yes, broadly characterized, those would be the only two, a viatical or a life settlement.[42]

Fifth, Mr. Mark Embry, another witness Defendants designated to testify on certain topics at the Rule 30(b)(6) deposition, likewise testified that Life Partners treats life settlements and viaticals as entirely separate products, although he initially testified that Life Partners has no

---

[42] Peden dep. at 34:6-38:5, APP_14 - 17 (objections omitted).

internal definition of viaticals and that the company instead adopts the many, varying definitions used by the states in which it does business:

> Q. [by Mr. Bridges] Life Partners, LPI, also distinguishes between viatical and life settlement contracts; is that right?
>
> A. That's correct.
>
> Q. Can you describe the difference between the two?
>
> A. The difference is really based on the state definition.[43]
>
> Q. Does LPI have a definition of viatical that it uses internally, or does it adopt the state definitions?
>
> A. We adopt the state.
>
> Q. So instead of one definition, it has many definitions?
>
> A. Yes.[44]

In response to follow-up questions by Life Partners' counsel, however, Mr. Embry testified unequivocally that the company uses a precise definition of the terms viatical and life settlements, and that they are mutually exclusive categories:

> Q. [by Ms. Yingling] Mr. Embry, from LPI's perspective, how does LPI determine internally how to categorize a policy as a viatical versus a life settlement?
>
> A. Okay. Anyone with an – a condition of HIV gets classified as a viatical. If they have a terminal illness with two years or less to live and they're less than 76, they're considered a viatical. If they have a terminal illness and they're 86, it's a life settlement.[45]
>
> Q. And is that determination of whether a policy is considered a viatical or a life settlement – is that coded into the Life Partners database in some way?
>
> A. Yes.

---

[43] Embry dep. at 20:12-19, APP_20.

[44] *Id.* at 23:24-24:5, APP_21 - 22.

[45] Mr. Embry later clarified that the line between 76 and 77 year olds is the point of demarcation for life settlements versus viaticals. *Id.* at 38:19-39:5, APP_25 - 26.

Q.   And how does that get coded?

A.   It's a flag in the system. It's either one or the other.[46]

Sixth, consistent with Mr. Peden's and Mr. Embry's testimony, Defendants distinguish between viaticals in their own documents, which plainly demonstrate that viaticals are not life settlements. For example:

1.   The first question and answer listed on the FAQ page of the Life Partners web site, http://www.lifepartnersinc.com/home/faqs.html, reads,

What is a life settlement?

A transaction whereby a written agreement is solicited, negotiated, offered, entered into, delivered, or issued for delivery in this state, under which a life settlement provider acquires, through assignment, sale, or transfer, a policy insuring the life of an individual <u>who does not have a catastrophic or life-threatening illness or condition</u> by paying the owner or certificate holder compensation or anything of value that is less than the net death benefit of the policy.[47]

2.   On page 22 of its most recent Form 10-Q, which is available at http://www.sec.gov/Archives/edgar/data/49534/000114420412038636/v31787 0_10q.htm, Life Partners Holdings discloses,

We sold all of our <u>viatical</u> positions and approximately 40% of our <u>life settlements</u> portfolio to unrelated parties in May 2012.[48]

3.   On page 8 of its most recent Form 10-K, which is available at http://www.sec.gov/Archives/edgar/data/49534/000114420412027983/v31224 4_10k.htm, Life Partners Holdings explains,

---

[46] *Id.* at 36:12-37:2, APP_23-24.

[47] APP_28 (emphasis added).

[48] APP_29 - 31 (emphasis added).

> We noted that both the articles and the claims by the SEC [regarding Dr. Cassidy's life expectancies] used a sampling period for life expectancies that related generally to viatical settlements with HIV insureds. With medical advances, some of these insureds have lived far beyond their original life expectancy. This development was not unique to us, but affected the industry generally. Due to these developments, we have not engaged in a material number of viatical settlements since 2008. We believe the sampling of viatical settlements does not reflect the accuracy of our estimates for life settlements. Nonetheless, some data indicates that the life settlement industry may have underestimated life expectancies.[49]

In short, Defendants knew all along that the use of the term "life settlements" in the class definition did not include and was not intended to include viaticals. To the extent that Plaintiffs have utilized data or quoted statistics that include both life settlements and viaticals, it is because the defendants have produced that data in a form that is aggregated and in a format that does not allow Plaintiffs to distinguish between the two. To the extent that Plaintiffs' experts have considered life expectancies that Dr. Cassidy prepared in connection with viaticals as well as those prepared in connection with life settlements, it is because the problems with his methodology and the inaccuracy of his results may be relevant.   The relevance of viaticals, however, does not somehow transform viaticals into life settlements.

Defendants claim, for the first time in this Motion, that they did not sell life settlements before 2004. That claim, if it proves true, necessarily limits the class period. Plaintiffs, however, were not aware of that claim before now, and the pleadings and discovery requests that cover the earlier years did not result from any intention to include viaticals in the class definition.

Similarly, even if Defendants prove correct their argument that Plaintiffs misread statistics originally presented in a Wall Street Journal article and, as a result, Plaintiffs mistakenly pleaded a total number of life settlement transactions that included viaticals Defendants sold in the early 1990s, such an alleged error would be meaningless and irrelevant to the present motion.

---

[49] APP_32 - 34 (emphasis added).

Defendants have known all along that Plaintiffs were not contesting transactions from the early 1990s because Dr. Cassidy's life expectancies are the focus of their claims, and he did not begin working for Life Partners until sometime in 1999.[50]

**III.     The Reply Brief, Even Assuming Arguendo It Contains Non-Rebuttal Materials, Meets the Standards for Acceptance.**

As demonstrated above, the Reply here contains purely rebuttal evidence.  Even if it contained entirely new materials, it should be accepted and considered here.  In *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004), the Fifth Circuit explained as follows:

> Although we have not comprehensively identified all the circumstances under which a district court may rely on arguments and evidence presented for the first time in a reply brief, we have stated that Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling. Further, those circuits that have expressly addressed this issue have held that *a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond.*

(Emphasis added)

Courts in the Northern District of Texas have followed just such a procedure in several contexts.  For example, in *Spring Industries, Inc. v. American Motorists Insurance Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991), the Court considered whether, in connection with a motion to stay discovery, it would be appropriate to consider a proposed reply brief with new supporting materials. The Court, while recognizing that it could decline to consider new materials submitted with a reply brief, granted leave to file the reply and held that there would be "no palpable injustice in considering new supporting materials ..., followed by an additional response and

---

[50] There is one minor error Defendants identify that is exactly that – an error, albeit an immaterial one in context. It occurred in a brief filed in Nevada seeking to compel Dr. Cassidy to produce documents. He has refused to produce any documents to date. The statement inadvertently omits the words "in life settlements" that appear in brackets below and therefore inaccurately states, "All consumers that have purchased fractional interests [in life settlements] from Defendants in which Dr. Cassidy provided the life expectancies are within the current class definition." Plaintiffs' counsel has since informed Dr. Cassidy's counsel of the inaccuracy and of Plaintiffs' intent to correct the statement in the upcoming reply brief on that motion to compel. *See* APP_35 – 36.

final reply brief." *Id.* at 240. Numerous other Northern District of Texas cases, including some cited by the Defendants, are to the same effect.[51]

These principles support the denial of the Motion here. The Defendants have demonstrated no "palpable injustice" that would result from the admission of the Fuller and Stallard affidavits. The affidavits were not submitted "at the eleventh hour," as no date for the class certification hearing has been set. Furthermore, all six of the areas of possible prejudice identified in the Motion[52] would have been cured had Defendants accepted Plaintiffs' offer to agree to Defendants' filing a revised opposition brief.

## IV.    Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion.

---

[51] *See, e.g., Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 2008 U.S. Dist. LEXIS 114397, at *2 (N.D. Tex. July 23, 2008) (permitting sur-reply); *Schimek v. MCI, Inc.*, 2006 U.S. Dist. LEXIS 54747 at *2 n. 5 (N.D. Tex. 2006); *Gump v. Trinity Christian Academy*, 2005 U.S. Dist. LEXIS 15201 at *1 n. 1 (N.D. Tex. 2005); *Pennsylvania General Industries Co. v. Story*, U.S. Dist. LEXIS 9923 at *1 (N.D. Tex. 2003).

[52] *See* Motion at pp. 9-10.

DATE: July 17, 2012

Respectfully submitted,

Steven G. Sklaver
California Bar No. 237612 (Admitted PHV)
Amy T. Brantly
California Bar No. 210893 (Admitted PHV)
abrantly@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
Suite 950
1901 Avenue of the Stars
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ssklaver@susmangodfrey.com

/s/ Terrell W. Oxford
Terrell W. Oxford
Texas State Bar No. 15390500
Jonathan Bridges
Texas State Bar No. 24028835
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
Email: toxford@susmangodfrey.com
       jbridges@susmangodfrey.com

Kim E. Miller
California Bar No. 178370 (Admitted PHV)
**KAHN SWICK & FOTI, LLC**
500 5th Avenue, Suite 1810
New York, NY 10110
Tel: (212) 696-3730
Fax: (504) 455-1498
Email: Kim.Miller@ksfcounsel.com

Lewis S. Kahn
Louisiana Bar No. 23805 (Admitted PHV)
Craig J. Geraci, Jr.
Alabama Bar No. 3847-C62G (Admitted PHV)
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498
Email: Lewis.Kahn@ksfcounsel.com
       Craig.Geraci@ksfcounsel.com

Bruce K. Packard
State Bar No. 15402300
W. Craig Stokley
State Bar No. 24051392
**RINEY PALTER, PLLC**
5949 Sherry Lane, Suite 1616
Dallas, Texas 75225-8009
Telephone: 214-461-1200
Facsimile: 214-461-1210
Email: bpackard@rineypalter.com
       cstokley@rineypalter.com

**INTERIM CO-LEAD CLASS COUNSEL**

Stuart H. McCluer
MCCULLEY MCCLUER PLLC
1223 Jackson Avenue East, Suite 200
P.O. Box 2294
Oxford, Mississippi 38655
(662) 236-1401
smccluer@mcculleymccluer.com

**ADDITIONAL COUNSEL FOR PLAINTIFFS**

**COUNSEL FOR PLAINTIFF SEAN TURNBOW**

2335660v1/012370

19

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on this 17th day of July, 2012. As such, this document was served on all counsel of record who are deemed to have consented to electronic service as indicated below.

Elizabeth L. Yingling
elizabeth.yingling@bakermckenzie.com
Kimberly F. Rich
kimberly.rich@bakermckenzie.com
Laura J. O'Rourke
laura.orourke@bakermckenzie.com
Will Daugherty
will.daugherty@bakermckenzie.com
BAKER & McKENZIE LLP
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201

ATTORNEYS FOR DEFENDANT

/s/ Terrell W. Oxford