UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SEAN TURNBOW, WILLIAM *and* MARY RICE, ROBERT YOSKOWITZ, FREDERICK VIEIRA, *and* ANTHONY TAYLOR, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE PARTNERS, INC., LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, *and* R. SCOTT PEDEN,<br><br>Defendants. | § § § § § § § § § § § § § § § § § §  Civil Action No. 3:11-cv-1030-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint [Docket Entry #42], filed by Life Partners, Inc. ("LPI"), Life Partners Holdings, Inc. ("LPHI"), Brian D. Pardo ("Pardo"), and R. Scott Peden ("Peden") (collectively, the "Defendants"). For the reasons stated below, Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint is **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND

This suit arises out of allegations by Sean Turnbow, William and Mary Rice, Robert Yoskowitz, Frederick Vieira, and Anthony Taylor (collectively, the "Plaintiffs") that Defendants overcharged Plaintiffs for their life settlement investments by negligently procuring policies and using grossly underestimated life expectancy figures. On August 25, 2011, in their Amended Consolidated Class Action Complaint, Plaintiffs set forth claims on behalf of themselves and

similarly situated individuals against LPI for breach of fiduciary duty and breach of contract, against Defendants LPHI, Pardo, and Peden for aiding and abetting breach of fiduciary duty, and against Defendants LPI, Pardo, and Peden for unlawful and/or unfair business practices under California's Unfair Competition Law ("UCL").  Defendants have moved to dismiss all of Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6).

Given that the Court is considering a Motion to Dismiss, Plaintiffs' version of the facts is taken as true at this stage in the litigation.[1]  At the heart of Plaintiffs' allegations are the means and methods by which LPI obtained and used life expectancy figures in pricing the life settlement investments purchased by Plaintiffs.  Plaintiffs allege that a life settlement transaction[2] involves the sale of an existing life insurance policy to an investor, typically for more than its cash surrender value, but less than its net death benefit.[3]   The discounted purchase price depends on the life expectancy of the insured, and the investor's return ultimately depends on the insured's actual longevity.  After the sale is consummated, the insured receives an immediate lump-sum cash payment.[4]  In return, the investor becomes the beneficiary of the policy and assumes the responsibility to pay premiums.[5]  Upon the death of the insured, the investor collects the face value of the policy.  The investor's profit is generally the difference between the face value of the policy and the sum of (1) the amount paid for the policy by the investor, (2) premiums paid to the insurance company, and (3) the administrative expenses incurred.[6]  The purchase of a life insurance policy in the secondary market is often transacted through a "provider company," which represents the interests of the investor and earns a fee or

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] The Agency Agreement between LPI and Plaintiffs references "viatical settlements" in addition to life settlements. For purposes of this Order, the Court does not distinguish between life settlements and viatical settlements.
[3] Pls.' Compl. ¶2 [Docket Entry #32].
[4] *Id.*
[5] *Id.*
[6] *Id.* ¶¶2–4.

commission when the purchase closes.[7]

Defendant LPHI, a financial services company and the parent company of LPI, is in the business of facilitating the sale of life settlement contracts.[8] LPHI derives its revenues principally from operating LPI, which receives fees for facilitating life settlement transactions for individual and institutional clients.[9] In addition to functioning as a provider company, LPI also buys policies for its own investments.[10]

Since 1991, Defendant Pardo has been the CEO of both LPI and LPHI.[11] Defendant Peden serves as General Counsel and Secretary of LPHI and President of LPI.[12] Plaintiffs allege that they entered into two separate contracts with LPI: an Agency Agreement and a Policy Funding Agreement.[13] In the Agency Agreement, which is a form, pre-printed contract, LPI contracted to act as Plaintiffs' purchasing agent.[14] After LPI identified life insurance policies it considered suitable for purchase, LPI and Plaintiffs entered into a "Policy Funding Agreement," which is also a form, pre-printed contract, through which Plaintiffs purchased fractional interests in specific life insurance policies at a price set by LPI, known as the "acquisition price."[15] With the acquisition price, LPI also provided Plaintiffs with a summary of the insured's medical history, which included life expectancy estimates for the insured, as calculated by Nevada oncologist Dr. Donald Cassidy ("Dr. Cassidy").[16] Plaintiffs plead that the life expectancy assessments were integral to (a) the calculation of what fractional interests investors would

---

[7] *Id.* ¶3.
[8] *Id.* ¶25.
[9] *Id.* ¶¶1, 24.
[10] *Id.* ¶24.
[11] *Id.* ¶¶26–7.
[12] *Id.*
[13] *Id.* ¶¶7, 68.
[14] *Id.* There are two versions of the form Agency Agreement. Unless stated otherwise, the provisions of the Agency Agreement cited in this Order are present in both versions of the Agency Agreement.
[15] *Id.* ¶69.
[16] *Id.* ¶42.

acquire in a policy and (b) the calculation by LPI of the acquisition price.[17]  If an insured outlived the life expectancy estimate, the death benefits of the policy would be delayed and additional premiums would be due, thus reducing the profitability of the investment.

Plaintiffs assert that LPI's engagement of Dr. Cassidy was a breach of LPI's fiduciary duties and contractual duties to Plaintiffs,[18] emphasizing that Dr. Cassidy did not have actuarial or other specialized training in preparing life expectancy assessments, and had no track record of making accurate life expectancy assessments.[19]  By way of example, Plaintiffs contend that for policies maturing[20] between 2007 and 2009, Dr. Cassidy provided average life expectancy assessments of less than three years—but the assessments proved to be understated by five to six years.[21]  Plaintiffs' Complaint cites an article in the *Wall Street Journal*, which noted that of 1,187 LPI policies, only 6.8% of insureds died at or before the date LPI, through Dr. Cassidy, projected.[22]  Plaintiffs plead that Defendants understood the effect of underestimated life expectancies on the profitability of their investments.[23]  Plaintiffs further aver that LPI compensated Dr. Cassidy at an above-market rate, and in a manner that incentivized Dr. Cassidy to grossly underestimate life expectancies.[24]

## II.   LEGAL STANDARD

### A. Rule 12(b)(1) Standard for Dismissal Due to Lack of Standing

The claim that a party lacks Article III standing is an attack on a court's subject matter

---

[17] *Id.* ¶10.
[18] *Id.* ¶13.
[19] *Id.* ¶28.
[20] A policy is considered to have "matured" when the insured passes away and the death benefits are paid to the policy holder.
[21] *Id.* ¶¶30–31.
[22] *Id.* ¶9.
[23] *Id.* ¶35.
[24] *Id.* ¶¶1, 10, 35, 37.

jurisdiction over that party.[25]  When a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action pursuant to Rule 12(b)(1).[26]  Normally, the court determines subject matter jurisdiction from the sufficiency of the allegations in a complaint, because they are presumed to be true.[27]  When, as here, a defendant raises only a "facial attack" on subject matter jurisdiction, which is based on the complaint alone, or on the complaint as supplemented by undisputed facts, the court must consider the allegations in a complaint as true.[28] Then, the Court's analysis is limited to whether the complaint is sufficient to establish standing.[29]

   The Supreme Court has held that Article III standing requires that: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) there be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[30]  The party invoking federal jurisdiction bears the burden of establishing these elements.[31]  At the pleading stage, general factual allegations of injury resulting from a defendant's conduct may suffice, as the court presumes that general allegations embrace those specific facts that are necessary to support the claim.[32]  Standing may be established by virtue of a plaintiff seeking recovery for an

---

[25] *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541–42 (1986).
[26] *See Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).
[27] *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).
[28] *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989).
[29] *See id.*
[30] *Id.* at 560–61 (internal quotation marks and citations omitted).
[31] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (stating that these three elements are "the irreducible constitutional minimum").
[32] *Id*. at 561.

economic harm.[33]

## B. Rule 12(b)(6) Standard for Dismissal for Failure to State a Claim

When considering a motion under Rule 12(b)(6), a court must accept as true all well-pleaded facts, and view those facts in the light most favorable to the plaintiff.[34] To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain a short and plain statement of the claim, showing that the pleader is entitled to relief.[35] The pleading standard Rule 8 announces does not require detailed factual allegations, but it does demand more than an unadorned accusation devoid of factual support.[36] While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[37] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[38] Where the facts do not permit the court to infer more than the mere *possibility* of misconduct, a complaint has stopped short of showing that the pleader is plausibly entitled to relief.[39]

### III.   ANALYSIS

## A. Standing

Defendants argue that Plaintiffs lack standing for the following reasons: (1) Plaintiffs Vieira and Taylor cannot establish an injury-in-fact with respect to those life settlement interests they sold before the policies matured; (2) Plaintiffs cannot establish an injury-in-fact with respect to *all* purchased life settlement interests, as Plaintiffs have not yet incurred any financial losses; and (3) the causal connection between alleged conduct by Defendants and any alleged injury to

---

[33] *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 722 (5th Cir. 2007).
[34] *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).
[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[36] *Id.*
[37] *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).
[38] *Twombly*, 550 U.S. at 570.
[39] Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 679.

Plaintiffs is lacking.[40]  Defendants do not appear to challenge the third element of the test for establishing constitutional standing: that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[41]  Accordingly, the Court addresses the only two elements of constitutional standing with which Defendants take issue: injury-in-fact and causation.

### a) Injury-in-fact

To qualify as an injury-in-fact, an alleged harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[42]  Plaintiffs contend that Defendants overcharged Plaintiffs for their life settlement interests and necessarily obligated Plaintiffs to incur additional premium payments because of the grossly erroneous life expectancies.[43]  In essence, Plaintiffs allege that their injury occurred at the *time of the purchase.*

Construing the Complaint in their favor, as it must, the Court finds that Plaintiffs have sufficiently alleged an economic injury-in-fact that gives Plaintiffs standing as to all counts asserted in the Plaintiffs' Complaint.[44]  Plaintiffs allege they paid more for their life settlement interests than they were worth because of Defendants' breaches, and thus, they would receive a lesser return on their investments.  In the Court's view, these allegations of the Plaintiffs establish their standing to pursue their claims against Defendants.[45]

In reaching its decision, this Court finds persuasive the decision of the Ninth Circuit in

---

[40] Defs.' Mot. to Dismiss at 4–5.
[41] In their Reply Brief, Defendants vaguely assert that Plaintiffs failed to establish "each of the three elements" to establish constitutional standing. Defs.' Reply Br. at 4.  To the extent Defendants contest whether Plaintiffs have established the third element, the Court concludes that a favorable decision would redress Plaintiffs' injuries.
[42] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81 (2000) (citing *Lujan,* 504 U.S. at 560–61 (1992)).
[43] Pls.' Compl. ¶¶12, 15.
[44] *Sierra Club v. Morton,* 405 U.S. 727, 733–34 (1972).
[45] The United States District Court for the District of Colorado reached a similar conclusion in *Paoloni v. Goldstein*, 200 F.R.D. 644, 645-46 (D. Colo. 2001).  In *Paoloni*, the plaintiffs, who represented individual purchasers, alleged that they were injured when they purchased viatical settlement contracts based on defendants' false and misleading offering material.  *Paoloni*, 200 F.R.D. at 645-46.  The court found that these allegations were "clearly enough to establish the constitutional standing for the Plaintiff-Investors to bring th[e] action." *Id.*

*Maya v. Centex Corporation.*[46] There, the Ninth Circuit considered whether individuals who purchased homes in new housing developments, which they retained, had standing to sue the developers for injuries allegedly caused by the developers' misrepresentations about the developments.[47] The Ninth Circuit, in analyzing standing, adopted a "time-of-sale injury" theory,[48] finding that the plaintiffs sufficiently pleaded injury-in-fact by alleging that they spent money buying houses they would not have bought had the false misrepresentations not been made.[49] The Ninth Circuit found that the plaintiffs' injury was "created at the *moment of fraudulent purchase*."[50] In so finding, the court rejected the notion that the possibility of future economic recovery in the housing market eliminated injury-in-fact for standing purposes.[51]

Here, like the plaintiffs in *Maya,* Plaintiffs allege they spent money they would not have spent absent Defendants' conduct.[52] The Court notes that Plaintiffs also seek disgorgement as a remedy for LPI's alleged breach of its fiduciary duties, which makes irrelevant whether all or some of the Plaintiffs also incurred actual or nominal damages.[53] Because disgorgement is a proper remedy for breach of fiduciary duties, even in the absence of actual damages, and LPI owed Plaintiffs fiduciary duties, Plaintiffs suffered an injury-in-fact with respect to their breach of fiduciary duty claims.[54]

---

[46] 658 F.3d 1060 (9th Cir. 2011). In support of their standing argument, Defendants rely heavily on the district court's holding in *Maya v. Centex Corporation,* No. 09-cv-01671, 2010 U.S. Dist. LEXIS 44829 (C.D. Cal. Mar. 31, 2010). That case was reversed by the Ninth Circuit, after the filing of Defendants' Motion to Dismiss.
[47] *Id.* at 1065.
[48] *Id.* at 1069.
[49] *Id.*
[50] *Id.* (emphasis added).
[51] *Id.*
[52] *See id.*
[53] *See generally Meadows v. Hartford Life Ins. Co.*, No. H-05-2209, 2006 WL 2336913, at *6 n.9 (S.D. Tex. Aug. 10, 2006) (holding that at the pleading stage, plaintiff's claimed injury was sufficient to establish standing where plaintiff alleged that he was injured when defendants knowingly participated in corporation's breach of fiduciary duty, and nominal damages and disgorgement were claimed).
[54] *See ERI Consulting Engineers v. Swinnea,* 318 S.W.3d 867, 872-73 (Tex. 2010) (holding that courts may fashion equitable remedies, such as profit disgorgement and fee forfeiture, to remedy a breach of fiduciary duty).

### b) Causation

Defendants also claim an alleged lack of standing due to the absence of causation, as a matter of law.[55] To survive a motion to dismiss for lack of constitutional standing, "plaintiffs must only establish a 'line of causation' between defendants' action[s] and their alleged harm that is more than 'attenuated.'"[56] "A causal chain does not fail simply because it has several 'links,' provided that those links are 'not hypothetical or tenuous' and remain 'plausibl[e].'"[57] Construing the facts in the light most favorable to Plaintiffs, and drawing all inferences in their favor, the Court concludes that Plaintiffs have sufficiently alleged that Defendants' use of Dr. Cassidy's grossly underestimated life expectancy figures caused Plaintiffs to overpay for life settlement interests. Plaintiffs aver that a shorter life expectancy translates to a greater profit to LPI, and that Defendants understood the effect of understating life expectancy estimates on the ultimate return on their investments.[58] Assuming these allegations are true, Plaintiffs can plausibly claim that underestimated life expectancies originated by Defendants had an identifiable effect on the price Plaintiffs paid for their investments.[59]

At the pleading stage, when all inferences are indulged in favor of Plaintiffs, their claims will not be dismissed for lack of standing. Plaintiffs have alleged injury-in-fact and causation to sufficiently withstand Defendants' 12(b)(1) Motion to Dismiss. The Motion is therefore **DENIED**.

### IV.    Failure to State a Claim

Defendants also urge that Plaintiffs fail to state a claim for breach of fiduciary duty,

---

[55] Defs.' Mot. to Dismiss at 9 ("Plaintiffs must establish that the 'life expectancy scheme' was the proximate cause of the injury.").
[56] *Maya*, 658 F.3d at 1070 (quoting *Allen v. Wright,* 468 U.S. 737, 757 (1984)).
[57] *Id.* (quoting *Nat'l Audubon Soc., Inc. v. Davis,* 307 F.3d 835, 849 (9th Cir. 2002)).
[58] Pls.' Compl. ¶¶10, 35.
[59] *See Maya*, 658 F.3d at 1070.

aiding and abetting breach of fiduciary duty, breach of contract, and liability under the UCL.

## A. Breach of Fiduciary Duty

Defendant LPI urges that Plaintiffs' breach of fiduciary duty claim should be dismissed for two reasons: (1) the economic loss rule of *Southwestern Bell Telephone Co. v. DeLanney*[60] bars Plaintiffs' breach of fiduciary duty claim; and (2) alternatively, Plaintiffs have not sufficiently pleaded the elements of a breach of fiduciary duty claim.

### a) Economic Loss Rule

LPI's first argument is that Plaintiffs are barred from suing LPI for anything other than breach of contract, in light of the Agency Agreement between it and the Plaintiffs. In support, LPI relies on *DeLanney*, where the Texas Supreme Court, in analyzing whether a plaintiff may recover on a tort theory, reasoned that it is "instructive to examine the nature of the plaintiff's loss."[61] The Court re-stated the established principle that "[w]hen the injury is only the economic loss to the subject of the contract itself the action sounds in contract alone."[62] LPI urges that the Plaintiffs' only claimed loss, the alleged overpayment for life settlement interests and additional premiums, is the subject matter of the Agency Agreements between Plaintiffs and LPI. Thus, LPI argues, Plaintiffs' claim sounds only in contract.

LPI's argument ignores the specific exception noted in *DeLanney*. Some contracts "involve special relationships that may give rise to duties enforceable as torts."[63] To identify those cases where the plaintiff can sue in tort despite the existence of a contract, the Texas Supreme Court referred to two key factors: (1) the source of the defendant's duty to act, and (2)

---

[60] 809 S.W.2d 493, 494–95 (Tex. 1991).
[61] *Id.*
[62] *Id.* (quoting *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986)).
[63] *Id.* at 494 n.1.

the nature of the remedy or damages sought by the plaintiff.[64] The instant case fits squarely within this exception. The source of the LPI's duty to act is not the Agency Agreement itself, but the fiduciary relationship that exists separate and apart from the Agency Agreement. Stated differently, Plaintiffs' breach of fiduciary duty claim arises not out of the Agency Agreement itself, but from the fiduciary duties arising out of the agency relationship.  Second, the nature of Plaintiffs' damages is outside the subject matter of the contract because in the alternative to damages, Plaintiffs seek disgorgement of fees and profits and/or return of what they overpaid as a result of the alleged breaches.

The Fifth Circuit's holding in *Fidelity & Deposit Company of Maryland v. Commercial Casualty Consultants, Inc.*[65] is significant to this analysis.  There, the Fifth Circuit upheld a jury verdict against defendants for knowingly breaching their fiduciary duties.[66]  The Fifth Circuit rejected defendants' argument that because plaintiff's rights flowed from the agency agreement, under *DeLanney* plaintiff could not recover in tort.[67]  In doing so, the Fifth Circuit restated the *DeLanney* rule: "[A] party to a contract who seeks redress because another party violated a contractual obligation is relegated to an action for breach of contract. But if the contract creates a special relationship imposing a duty, breach of that duty may give rise to an independent tort action."[68]  The Agency Agreement here, like the agency agreement in *Fidelity*, creates a special relationship that creates fiduciary duties by operation of law.  Those fiduciary duties, when breached, give rise to an independent tort action.  Thus, the economic loss rule is inapplicable, and does not bar Plaintiffs' breach of fiduciary duty claim.

---

[64] *Id.*
[65] 976 F.2d 272 (5th Cir. 1992).
[66] *Id.*
[67] *Id.*
[68] *Id.*

### b) Elements of a Breach of Fiduciary Duty Claim

LPI further argues that Plaintiffs' breach of fiduciary duty claim should be dismissed because the existence of the Agency Agreement limits the alleged fiduciary duties LPI owed to Plaintiffs to what is in the Agency Agreement.[69] This argument misses the mark. The Agency Agreement, by which LPI contractually agreed to act as the purchasing agent for Plaintiffs, created an agency relationship. Inherent within an agency relationship is a fiduciary duty that an agent owes to its principal with respect to matters within the scope of its agency.[70] Plaintiffs need not assert specific violations of the Agency Agreement to support their breach of fiduciary duty claim. A fiduciary duty is imposed by law as a result of the agency relationship.[71]

LPI is correct that the duties owed by an agent to a principal may be altered by agreement.[72] However, LPI does not identify any provisions in the Agency Agreement that purportedly limit LPI's fiduciary duties to the Plaintiffs.[73] Plaintiffs have sufficiently alleged facts regarding LPI's alleged breach of its fiduciary duties and resulting damages.[74] Therefore, Defendants' Motion to Dismiss Plaintiffs' claim for breach of fiduciary duty is **DENIED**.

### B. Aiding and Abetting Breach of Fiduciary Duty

Defendants move to dismiss Plaintiffs' claim for aiding and abetting breach of fiduciary duty on the ground that, since there is no fiduciary duty claim against LPI, the other Defendants could not have aided and abetted it. Given that the Court has found that Plaintiffs have adequately stated a claim against LPI for breach of fiduciary duty, Defendants' Motion to Dismiss Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty claim is also **DENIED**.

---

[69] Defs.' Mot. to Dismiss at 14 [Docket Entry #42].
[70] *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007).
[71] *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours and Co.*, 118 S.W.3d 60 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).
[72] *Nat'l Plan Adm'rs, Inc.,* 235 S.W.3d 695.
[73] Neither agreement contains language limiting LPI's fiduciary duties.
[74] Pls.' Compl. ¶¶55–58.

**C. Breach of Contract**

Defendant LPI also argues that Plaintiffs' breach of contract claim should be dismissed because: (1) the Complaint fails to sufficiently allege a claim for breach of contract, particularly with respect to what particular provisions of the agreements LPI purportedly breached; and (2) Plaintiffs have failed to demonstrate that they have incurred damages as a result of LPI's purported breach of contract. LPI does not dispute that Plaintiffs have sufficiently alleged the existence of a valid contract nor that Plaintiffs' performed under its terms.

**a) Breach of Contract**

Plaintiffs cite to the contractual provision in the Agency Agreement, by which LPI agreed to "identify and assist in the purchase of such life insurance policies and/or related death benefits specified by purchaser to be used as collateral for said note and which comply with the following criteria…."[75] One of the criteria is that the "insured must have an actuarially or medically determined life expectancy of no more than ten (10) years."[76] Plaintiffs do allege that provision was breached.

As to the Policy Funding Agreement, Plaintiffs allege breach of Section 2.01, which states as follows:

> LPI shall perform the following duties:
> 
> - Review applicants for viatical or life settlements
> - Qualify applicants for viatical or life settlements based upon underwriting criteria and other relevant guidelines pursuant to the above-referenced Agency Agreement, and provide such information to Purchaser

Plaintiffs argue that by knowingly and/or carelessly using Dr. Cassidy's unreliable and inaccurate life expectancies instead of life expectancies determined by reasonable actuarial or

---

[75] App. in Supp. of Defs.' Mot. to Dismiss and Br. in Supp. [Dkt. #42-1] Ex. 2 at 15; Pls.' Compl. ¶68.
[76] App. in Supp. of Defs.' Mot. to Dismiss and Br. in Supp. [Dkt. #42-1] Ex. 2 at 15.

medical standards, LPI breached the Policy Funding Agreement. In the Court's view, Plaintiffs have sufficiently pleaded facts to support a breach of contract claim.

Moreover, the Court finds that the pleading states a claim based upon implied contractual terms. In *Montgomery Ward & Co. v. Scharrenbeck,* the Texas Supreme Court noted, "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, *as well as* a breach of the contract."[77] Plaintiffs contend that LPI breached these implied obligations by providing life expectancies that were not determined using reasonable medical or actuarial standards or procedures. The Court concludes Plaintiffs have alleged facts that would plausibly demonstrate that LPI breached common law duties owed to Plaintiffs.[78] Accordingly, the Court finds that Plaintiffs have adequately pleaded a breach of contract by LPI.

### b) Damages

LPI argues that Plaintiffs have not properly alleged any claim for damages resulting from a breach of contract by LPI. In fact, Plaintiffs' Complaint adequately provides notice of their damages, namely, that LPI overcharged plaintiffs for life settlement interests and obligated them to pay excess additional premiums.[79] Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for breach of contract is **DENIED**.

### D. California Business & Professions Code § 17200

Defendants argue that Plaintiffs fail to state a under the UCL, because Plaintiffs have

---

[77] 146 Tex. 153, 157(1947) (emphasis added).
[78] Defendants' Motion to Dismiss misunderstands Plaintiffs' Complaint as alleging a breach of an implied covenant of good faith and fair dealing. The issue of whether a contract contains such an implied covenant is distinct from the issue of whether a contract triggers a common law duty to perform the agreed tasks with care, skill, reasonable expedience, and faithfulness, which is what the Court concludes Plaintiffs are alleging was breached and which *Scharrenbeck* approves.
[79] Pls.' Compl. ¶71.

failed to allege sufficiently that Defendants' actions were unlawful and/or unfair business actions and practices.

The Court agrees that Plaintiffs have failed to allege the violation of any law by LPI. To state a claim under the "unlawful" prong, Plaintiffs must describe the predicate unlawful acts that form the basis of the claim.[80] In their Complaint, Plaintiffs do not state what laws may have been violated by Defendants' alleged wrongful conduct. Thus, Plaintiffs do not state a claim for unlawful conduct under the UCL, and that claim is **DISMISSED** without prejudice, subject to Plaintiffs repleading within twenty-one days of the date of this Order, if Plaintiffs can do so in good faith, to allege how the conduct was unlawful.

However, each prong of California's UCL can form the basis of an independent claim.[81] A business practice is "unfair" under the UCL when it offends an established public policy, or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[82] To prevail on a claim that a practice is unfair, a plaintiff must establish that "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers could reasonably have avoided."[83] California courts have stated that a plaintiff may make out a prima facie case of unfair conduct by alleging wrongful conduct on the part of a defendant, without speculating as to any countervailing interests the defendants may have had.[84] Plaintiffs allege improper business practices as to life expectancies that, if true, could be actionable as alleged unfair business practices under the

---

[80] *Id.*
[81] *Id.*
[82] *Wilner v. Sunset Life Ins. Co.,* 78 Cal. App.4th 952, 965 (Cal. Ct. App. 2000).
[83] *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App.4th 824, 839 (Cal. Ct. App. 2006).
[84] *See Motors, Inc. v. Times Mirror Co.,* 102 Cal. App.3d 735, 740 (Cal. Ct. App. 1980) ("[S]ince the complaint is unlikely to reveal defendant's justification, if th[e] pleading states a prima facie case of harm, ... the defendant should be made to present its side of the story.").

UCL.[85] Therefore, Defendants' Motion to Dismiss Plaintiffs' claim of unfair practices under the UCL is **DENIED**.

For the foregoing reasons, Defendants' Motions to Dismiss are **DENIED**, except for their UCL claim of unlawful practices, which is **DISMISSED** without prejudice, subject to Plaintiffs repleading within twenty-one days.

**SO ORDERED**.

Dated: September 28, 2012.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[85] *See, e.g., Koh v. S.C. Johnson & Son, Inc.,* No. C–09–00927 (RMW), 2010 WL 94265, at *2 (N.D. Cal. Jan.6, 2010) (complaint adequately alleged injury under UCL through claims that plaintiff bought the product at a premium price in reliance on defendant's misleading suggestion that the product was environmentally friendly); *Chavez v. Blue Sky Natural Beverage Co.,* 340 F. App'x. 359 (9th Cir. 2009) (injury sufficiently pled where plaintiff purchased product because of misrepresentation as to its source).